RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 07a0142p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

No. 06-1263

FREDERICK KAKOS,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 05-80290—George C. Steeh, District Judge.

Argued: February 2, 2007

Decided and Filed: April 20, 2007

Before: KENNEDY, BATCHELDER, and CLAY, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Robert M. Kalec, DEAN & FULKERSON, Troy, Michigan, for Appellant. Patricia G. Gaedeke, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellee. **ON BRIEF:** Robert M. Kalec, DEAN & FULKERSON, Troy, Michigan, for Appellant. Patricia G. Gaedeke, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellee.

_____

## OPINION

_____

CLAY, Circuit Judge. Defendant Frederick Kakos appeals his conviction for the interstate receipt of stolen property pursuant to 18 U.S.C. § 2315. Defendant was charged, in a single count indictment, with knowingly receiving a stolen trailer and the stolen meat contained within that trailer. On appeal, Defendant argues that the indictment was duplicitous, thereby compromising his right to a unanimous jury verdict, and that the district court committed plain error by failing to give the jury a special unanimity instruction which would have eliminated any such prejudice. For the reasons that follow, we **AFFIRM** Defendant's conviction.

## BACKGROUND

On October 12, 2002, Defendant and his uncle, Sargis Malik, arrived at the home of Defendant's cousin, Maureen Ranierin, who managed a small business storing trucks and trailers on her property in Warren, Michigan. Malik was driving a tractor trailer, which was stolen, as was the $30,000 worth of Kroger's meat contained in the trailer. Defendant told Ranierin that Malik was

1

going to have a heart attack, and that Defendant needed to take him to the hospital. Ranierin reluctantly consented to Defendant parking the trailer on her lot, although she charged him twenty dollars more than the usual parking fee. After the rig was parked, Defendant went into the trailer and emerged with a tray of meat, which he offered to Ranierin, who eventually accepted it upon Defendant's insistence. A few minutes later, Defendant and Malik left in the tractor. Malik drove the tractor to Defendant's house (leaving the trailer in storage with Ranierin), and then Defendant drove Malik to the hospital where Malik was admitted.

By October 17, 2002, the Federal Bureau of Investigations ("FBI") was investigating the theft of the meat and the trailer. On or about that date, Special Agent Johnston of the FBI interviewed Malik at the hospital, and learned that the trailer was filled with meat. Johnston interviewed Defendant on the same day. Defendant first told Johnston that Malik had bought the meat and needed help storing it. Johnston pressed Defendant on this point, and Defendant then told Johnston that his uncle was forced to steal the meat and had asked Defendant for help, which Defendant agreed to provide. Defendant told Johnston that he contacted another individual, Fred Maltise, to try to sell the meat.

Later during the course of the investigation, the FBI searched the tractor, which was parked in front of Defendant's house. The search revealed a handwritten note from an unknown person on which Defendant's cell phone number was written, as well as directions to Ranierin's storage facility. The FBI's investigation also uncovered phone records that revealed a large volume of calls between Defendant and Malik in the time preceding the theft of the trailer.

On February 12, 2003, after the FBI had contacted Maltise, Johnston again interviewed Defendant. Defendant at this point claimed that he did not know that the meat was stolen. According to Defendant, Malik came to him and said that he had bought the meat for $15,000, and was trying to sell it for $15,000. Defendant revealed that he had some of the meat at his house, and Johnston accompanied Defendant to his house, where Johnston recovered meat that was hidden in Defendant's garage. Defendant also admitted eating some of the meat.

Defendant was indicted for a single count of interstate receipt of stolen property in violation of 18 U.S.C. § 2315 on March 22, 2005. The indictment alleged that:

> On or about October 12, 2002, . . . Defendant . . . did unlawfully receive, possess and store, goods, wares and merchandise which had crossed State lines . . . after being stolen, that is, a trailer valued at approximately $32,000.00 . . . owned by EXTRA LEASE, . . . which trailer contained two orders of ground beef, ground round, ground chuck and sirloin marked with the Kroger brand name, valued at approximately $30,000.00 knowing the same to have been stolen in violation of Title 18, United States Code Section 2315.

Defendant pled not guilty, and trial was held on June 7 and 8, 2005. Defendant's defense at trial was that he had not possessed the trailer, and that in any event he did not know that the property was stolen at any time when he could conceivably have been in possession of the trailer. Defendant testified that the first time he learned that the meat was stolen was when Malik called him from the hospital. On June 8, 2005 the jury returned a verdict of guilty. Defendant was sentenced to eleven months and twenty-nine days incarceration, to be followed by a period of three years of supervised release, and payment of $28,992.98 in restitution.

## DISCUSSION

Defendant first claims that the indictment was duplicitous because it charged him, in a single count, with the allegedly separate offenses of possessing a stolen trailer and possessing the stolen meat within that trailer. "An indictment is duplicitous if it sets forth separate and distinct crimes in

one count." *United States v. Davis*, 306 F.3d 398, 415 (6th Cir. 2002) (citing *United States v. Campbell*, 279 F.3d 392, 398 (6th Cir. 2002)). Whether an indictment is duplicitous is a question of law that this Court reviews *de novo*. *Id.* "The overall vice of duplicity is that the jury cannot in a general verdict render its finding on each offense, making it difficult to determine whether a conviction rests on only one of the offenses or on both." *United States v. Duncan*, 850 F.2d 1104, 1108 n.4 (6th Cir. 1988). While a duplicative indictment can prejudice a defendant in a variety of ways, the primary concern is that a defendant may be deprived of his right to a unanimous jury verdict. *See United States v. Savoires*, 430 F.3d 376, 380 (6th Cir. 2005); *United States v. Shumpert Hood*, 210 F.3d 660, 662-63 (6th Cir. 2000). That is, a jury might return a guilty verdict on the single count submitted to them without all twelve jurors agreeing that the defendant committed either of the offenses charged within that count. Other adverse effects on a defendant "may include improper notice of the charges against him, prejudice in the shaping of evidentiary rulings, in sentencing, in limiting review on appeal, [and] in exposure to double jeopardy." *Duncan*, 850 F.2d at 1108 n.4.

Pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B), a motion alleging a defect in the indictment must be made before trial. Yet while a defendant waives technical errors to an indictment by his failure to object to the duplicity before trial, the alleged harm to the defendant's substantive rights resulting from a duplicitous indictment can be raised at trial or on appeal, notwithstanding the defendant's failure to make a pretrial motion. *United States v. Adesida*, 129 F.3d 846, 849 (6th Cir. 1997). The rationale for this distinction is that, whereas Rule 12 applies only to defects in the institution of criminal proceedings, see *Davis v. United States*, 411 U.S. 233, 241 (1973), a verdict rendered by a less-than-unanimous jury violates a defendant's Sixth Amendment rights by a harm that arises from the trial itself. *See Johnson v. Louisiana*, 406 U.S. 356, 369 (1972) (Powell, J. concurring) ("In an unbroken line of cases reaching back into the late 1800's, the Justices of this Court have recognized, virtually without dissent, that unanimity is one of the indispensable features of federal jury trial." (emphasis removed)). As we explained in our analogous discussion of a multiplicitous indictment in *United States v. Rosenbarger*:

> The Government maintains that Fed. R. Crim. P. 12 should be applied in this case. Rule 12 provides, *inter alia*, that if the defense of multiplicity is not raised prior to trial, it is waived. The argument that one waives his right to object to the imposition of multiple sentences by his failure to object to the multiplicitous nature of an indictment is a *non sequitur*. Rule 12 applies only to objections with regard to the error in the indictment itself; the effect of Rule 12 is that dismissal of a multiplicitous indictment is not required; however, if sentences are imposed on each count of that multiplicitous indictment the defendant is not forced to serve the erroneous sentence because of any waiver.

536 F.2d 715, 721-22 (6th Cir. 1976). The law of duplicity parallels that of multiplicity. A defendant moving pursuant to Rule 12 can request that a duplicitous indictment be dismissed, see *Adesida*, 129 F.3d at 849, he can attempt to force the government to elect the charge within the count upon which it will rely, or he can ask the court to particularize the distinct offenses contained within a count. *See Shumpert Hood*, 210 F.3d at 663. By contrast, a defendant's objections to the indictment made after trial has begun are properly addressed not to the indictment itself but to the harm stemming from the duplicitous indictment. *See Davis*, 306 F.3d at 415; *Adesida*, 129 F.3d at 849.

Defendant, however, not only failed to challenge the indictment pursuant to Rule 12; he did not in any way raise the issue of duplicity before the trial court. Nevertheless, Defendant argues that our review is governed by a standard other than plain error. Where a defendant fails to object to an indictment before trial, the case proceeds under the presumption that the court's instructions to the jury will clear up any ambiguity created by the duplicitous indictment. *Adesida*, 129 F.3d at 849.

"[P]roper jury instructions can mitigate the risk of jury confusion and alleviate the doubt that would otherwise exist as to whether all members of the jury had found the defendant guilty of the same offense." *United States v. Lloyd*, 462 F.3d 510, 514 (6th Cir. 2006) (quoting *Savoires*, 430 F.3d at 380.) When confronting a challenge to duplicity not raised under Rule 12, this Court has frequently looked to the instructions actually given at trial to assess the risk that a defendant was convicted by a non-unanimous verdict. *See id.* at 515; *Savoires*, 430 F.3d at 380; *Davis*, 306 F.3d at 416; *United States v. Blandford*, 33 F.3d 685, 699 (6th Cir. 1994).

Because the harm from a duplicitous indictment is inextricably intertwined with the jury instructions actually given, when a defendant raises a challenge to a duplicitous indictment for the first time on appeal the issue of whether our review is limited to plain error depends upon whether the defendant objected to the jury instructions which failed to cure the faulty indictment. Where the defendant does not object to the district court's instructions to the jury, review is limited to plain error. This rule is required by *Lloyd*, where we stated that "Lloyd did not seek to dismiss the duplicitous count of the indictment before trial or challenge the jury instructions. Consequently, this court may overturn the conviction on count two only if there was plain error which affected Lloyd's substantial rights." 462 F.3d at 514; *see also Savoires*, 430 F.3d at 381 ("We may correct the errors identified by Mr. Savoires if they constitute 'plain error' within the meaning of [Federal Rule of Criminal Procedure] 52(b). The duplicity of the indictment and the related defects in the charge to the jury are plain." (citations omitted)). *Accord United States v. Verrecchia*, 196 F.3d 294, 297 (1st Cir. 1999) ("Although an argument that an indictment should be dismissed as duplicitous is waived if not made before trial, a defendant is still entitled on request to an instruction requiring jury unanimity on which offense (of the two or more alleged in the duplicitous count) he committed." (citations omitted)); *United States v. Savage*, 67 F.3d 1435, 1439 (9th Cir. 1995) ("Duplicity raises the concern that Savage could have been convicted without a unanimous verdict . . . . Because a substantial right is at issue, we review the jury instructions for plain error even though Savage failed to object to the instructions below."); *cf. United States v. Sasser*, 971 F.2d 470, 477 & n.5 (10th Cir. 1992) (noting that a challenge to the district court's refusal to give a specific unanimity charge was implicitly an assertion that the indictment was duplicitous).[1]

In the instant case, Defendant cannot demonstrate plain error. Defendant argues that there is a threat that he was not convicted by a unanimous jury verdict. Section 2315 of Title 18 of the United States Code prohibits the receipt or possession of stolen merchandise, valued at $5,000 or more, which has crossed state lines after being stolen, if the defendant "know[s] the same to have been stolen." The indictment alleged that the merchandise consisted of a stolen trailer that contained stolen meat. Defendant contends that some jurors might have concluded that he knew that the meat was stolen but did not know that the trailer was stolen, while other jurors could have believed exactly the opposite. We reject this argument because it is inconsistent with the evidence presented at trial. Throughout the trial, and in the instructions to the jury, the meat and the trailer were frequently referred to collectively as "the meat and the trailer" or "the property." Arguably, some of the evidence at trial implied that Defendant knew that the meat was stolen without necessarily

---

[1] At least two other circuits have held that a late challenge to a duplicitous indictment can be reviewed for plain error. *See United States v. Hammen*, 977 F.2d 379, 382 (7th Cir. 1992); *United States v. Masat*, 896 F.2d 88, 91 (5th Cir. 1990). *But see United States v. Payne*, 341 F.3d 393, 402 & n.5 (5th Cir. 2003) (suggesting that a duplicitous indictment not objected to at trial cannot be reviewed for plain error). In light of the rule that the prejudice from a duplicitous indictment can be cured by proper jury instructions, it is unclear whether there is in effect any difference between reviewing an indictment for duplicity and asking whether submitting the duplicitous count to the jury created the risk of conviction by a non-unanimous verdict.

implying that Defendant knew that the trailer was stolen.[2]   No evidence, however, suggested the inverse conclusion.  That is, Defendant points to nothing in the record that would allow a juror to infer that Defendant knew the trailer was stolen but did not know that the meat was stolen, and we likewise can find no evidence from which a juror could draw that conclusion.  There is consequently no risk that the jury was not unanimous in its belief that Defendant knowingly received stolen meat, and hence his conviction for violating § 2315 was proper.[3]  Because Defendant cannot demonstrate prejudice, he cannot show plain error, and we need not consider whether the indictment was duplicitous.[4]

Defendant also argues that the district court committed plain error by failing to issue a special unanimity instruction.  A special unanimity instruction would have informed the jury that they could agree that Defendant either possessed the trailer knowing it was stolen or that he possessed the meat knowing that it was stolen, but that they must unanimously agree that the same violation had been proven.  *See, e.g.*, *Blandford*, 33 F.3d at 699 (giving special unanimity charge with respect to extortion).  Although the question of whether a special unanimity instruction is necessary is not identical to the inquiry as to whether the indictment was duplicitous, see *United States v. Correa-Ventura*, 6 F.3d 1070, 1081 (5th Cir. 1993), Defendant does not suggest any reason why a special unanimity instruction was necessary that is independent of his argument that the indictment was duplicitous.  Therefore, we conclude that Defendant cannot demonstrate that the district court's failure to give a special unanimity instruction constituted plain error.

## CONCLUSION

Defendant cannot demonstrate the allegedly duplicitous indictment or the district court's failure to give a special unanimity instruction constituted plain error.  We therefore **AFFIRM** Defendant's conviction.

---

[2] For example, the fact that Defendant called Maltise in order to sell the meat and the fact that Defendant hid a tray of meat in his garage strongly suggested that he knew that the meat was stolen, but an inference that Defendant knew the trailer was stolen based on this evidence is more tenuous.

[3] Defendant stipulated that "the property had a value in excess of $5,000 to wit: $62,000" and that "after the property was stolen, it was transported in interstate commerce." J.A. at 19.  This tracks the indictment, which alleged that the trailer was valued at $32,000, the meat was valued at $30,000, and that both items had crossed state lines after being stolen.  Thus, Defendant's conviction under 18 U.S.C. § 2315 could have been properly based on a finding that Defendant possessed either the meat or the trailer (or both) knowing the same to have been stolen.

[4] For the first time in his reply brief, Defendant suggests that he was prejudiced because he was subject to an increased sentence pursuant to U.S. Guidelines Manual § 2B1.1(b)(1)(D).  Defendant has waived this argument by failing to raise it in his original brief on appeal.  And in any event, Defendant cannot demonstrate that he was prejudiced at sentencing inasmuch as the evidence against him was of ample strength to support the sentence imposed.