**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

File Name: 10a0684n.06

**Nos. 08-6219 & 08-6220**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

**Nov 04, 2010**

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| v. | ) | THE EASTERN DISTRICT OF |
| | ) | KENTUCKY |
| OCEANUS PERRY, (08-6219) | ) | |
| MARTIN PEDRO, (08-6220) | ) | |
| | ) | |
| Defendants-Appellants. | ) | |

_____

OPINION

BEFORE: GRIFFIN and WHITE, Circuit Judges; and MURPHY, District Judge.[*]

MURPHY, District Judge.

Defendants Oceanus Perry and Martin Pedro were convicted of forcibly assaulting a federal

corrections officer while in prison. Perry was also convicted of knowingly possessing a prohibited

object designed and intended to be used as a weapon. Both defendants appeal their judgments of

conviction, asserting various errors by the district court. Perry also appeals his sentence. For the

following reasons, the Court affirms the judgments of conviction and Perry's sentence.

**I.**

This criminal appeal arises out of a prison fight. On September 17, 2007, Perry and Pedro,

along with inmates William Burrell and Anthony Ward, were imprisoned at Big Sandy United States

_____

[*]The Honorable Stephen J. Murphy, III, United States District Judge for the Eastern District
of Michigan, sitting by designation.

Penitentiary in Inez, Kentucky. Officers Ed King, Roger Jude, and John Bussey were prison guards employed at Big Sandy. The following facts were established at trial, primarily though testimony and a video recording of the incident captured from four different angles.

The incident began on the second floor of the B-4 housing unit. Following protocol, Officer Bussey asked Pedro to submit to a search of his person. Pedro refused. Bussey told Pedro he would be escorted to the Lieutenant's Office where he would be searched by supervisors. By this time Officer King had arrived to assist Bussey. Inmates Ward and Burrell, who were in close proximity to Pedro, interjected themselves between Pedro and the officers, and descended slowly down the stairs, thereby distracting the officers. Pedro descended quickly down the stairs and trotted off toward the back of the housing unit. On his way, Pedro handed an object to Perry, who was standing in the common area of the housing unit. Officers King and Bussey retrieved Pedro and returned him to the location of the other inmates.

Officer Bussey and the three inmates eventually ended up in a downstairs corner of the housing unit and Bussey began searching Pedro's person. Bussey told Ward and Burrell to move along, but they refused to leave Pedro's side. Officer Bussey radioed for assistance. Officers Jude and King arrived and the three officers told the inmates to place their hands on the wall. Officer Jude began searching Burrell. During the search, Burrell removed his hands from the wall and told Jude to keep his hands off of him.[1] Jude ordered Burrell to place his hands back on the wall and Burrell complied. Shortly thereafter, Burrell again removed his hands from the wall and turned to face

---

[1]Burrell testified that Officer Jude had intentionally touched Burrell's genitalia during the sweep, and that was the reason Burrell removed his hands from the wall.

Officer Jude.  At this point, Pedro removed his hands from the wall and started walking towards Officer Jude.  Jude attempted to tackle Burrell and bring him to the ground and Pedro took a swing at Jude.

Officers King and Bussey attempted to control Pedro and backed him into a wall.  Perry ran from the gallery toward the scuttle.  He dropped two items on the ground near the stairway before entering the fray.  One of the items was his radio headset.  The headphones became tangled in his boot and he dragged the headphones and the attached radio into the fight.  The other item remained by the stairwell, untouched, for the duration of the fight.  The video is clear in this regard.  Perry ran toward Pedro and Officers King and Bussey, grabbed Officer Bussey around the waist and pulled him down, which left Officer King to battle Pedro by himself.  Ward attempted to pull Officer King to the ground, which allowed Pedro to partially release himself from King's grasp.  Pedro freed himself with a punch to King's head, knocking him to the floor.  While on the floor, Pedro kicked and punched Officer King in the head.  Pedro allowed him up from the ground, and as Officer King rose, Pedro, with a running start, drove his knee into King's head, which spun King around.  Pedro began to punch King again in the torso.

Meanwhile, Perry had secured Officer Bussey in a full-body hold as both were lying on the ground.  Bussey testified that while the men were engaged on the ground, Perry began to choke him by placing the bend of his elbow on Bussey's Adam's Apple, a maneuver apparently known as a triangular choke hold.  Bussey testified that Perry told him to "hold still, that he's going to snap my neck." R. 234, at 63.  Officer Jude testified that he heard this comment. *Id.* at 233.  Perry testified that he never choked Bussey, but merely restrained him in order to try and contain the situation,

which he believed was escalating into an instance of officer brutality. He testified that he told Bussey, "Calm down, relax, I'm not trying to do nothing to you," and that *Bussey* said he was going to snap *Perry's* neck. R. 235, at 193.

While Perry was restraining Officer Bussey on the ground, Pedro, who was beating Officer King, took a break from King and kicked Bussey twice in the head. Officer King regained some balance, staggered back toward Pedro, and received one last punch in the torso before Pedro was shoved away by an oncoming officer. Pedro stumbled on his own shirt, which by that point was laying on the ground, and fell to the floor. Two other officers eventually restrained Pedro.

Officer King, meanwhile, assisted Officer Jude, who had been struggling with Burrell on the ground since the fight began. Additional officers arrived and struggled to remove Officer Bussey from Perry's clutch. The entire scuffle lasted less than 45 seconds and was captured by four video cameras placed at different angles in the housing unit. The jury watched the videos at trial.

As additional officers began arriving at the scene, the other item Perry set down by the stairway before entering the fight remained untouched. Lieutenant Gregory Nix eventually noticed it, picked it up, and placed it in his pocket. Nix testified later that the object was a six-inch metal weapon sharpened to a point, commonly known as a "shank." R. 235, at 67. The scene was photographed and the photographs were presented to the jury at trial. *See* appx. 65-77

Officers Bussey, King, and Jude, along with their examining physicians, testified at trial regarding the officers' injuries. Specifically, due to the squeeze Perry placed on Officer Bussey's neck, his airflow was severely restricted and he believed at that moment that he was going to die. He suffered redness around his neck, and pain throughout his neck and back. He had abrasions over

his right eye and right elbow. Officer King had pain in his nose, mouth, and the back of his head. He had bruising under his left eye, a hematoma on the back of his head just above his neck, a bloody nose, and a chipped tooth. In addition to physical injuries, Officer King suffered from depression and anxiety as a result of the attack. Officer Jude experienced lingering pain in his left shoulder and neck, and had decreased range of motion and muscle spasms.

Burrell, Pedro, and Perry were charged in a second superseding indictment with forcibly assaulting Officers Bussey, Jude, and/or King, inflicting bodily injury upon them, while the officers were engaged in the performance of their official duties. 18 U.S.C. § 111(a)(1) and (b). The government expressly included a theory of aiding and abetting in this charge. Perry was also charged in a separate count with knowing possession of a prohibited object intended to be used as a weapon. 18 U.S.C. § 1791(a)(2), (b)(3).

The jury found Pedro and Perry guilty on count one, and was deadlocked on count one with respect to Burrell. It found Perry guilty on count two. Both Perry and Pedro moved for judgments of acquittal and for new trials on various grounds. The district court denied all post-trial motions and the defendants were subsequently sentenced.

Both defendants appeal their judgments of conviction. Perry also appeals his sentence. The appeals were consolidated.

## II.

Perry and Pedro collectively assign nine instances of error by the district court. All of these arguments lack merit and the Court will affirm the judgments of conviction and Perry's sentence.

Most of the arguments have such little merit that there is no need to address them in detail.  Two issues, however, deserve greater discussion – which is set forth below.

### III.

Defendants first argue that count one of the indictment was duplicitous.  The Federal Rules of Criminal Procedure permit an indictment charging a defendant "in separate counts" with two or more offenses.  Fed. R. Crim. P. 8(a).  "An indictment is duplicitous if it sets forth separate and distinct crimes in one count." *United States v. Davis*, 306 F.3d 398, 415 (6th Cir. 2002).  Whether the indictment is duplicitous is a legal question that we review *de novo*.  *Id.*

The government argues that Pedro and Perry have waived their duplicity challenge by not raising it below.  This is partly right.  Our discussions of duplicity have distinguished between two ways in which a defendant may challenge a duplicitous indictment.  First, a defendant may challenge the *form* of the indictment, in which case he must do so prior to trial.  "In other words, *the technical error* of the duplicity must be raised before trial." *United States v. Adesida*, 129 F.3d 846, 849 (6th Cir. 1997) (emphasis added).  If the technical error is not raised early on, the trial proceeds, despite the duplicity, under the presumption that a jury instruction can clear up any ambiguity created by the duplicity.  *Id.*

Additionally, a defendant may challenge, at trial or on appeal, the alleged *harm* stemming from the duplicitous indictment, even if he failed to challenge the *form* of the indictment before trial. *Id.* at 849.  We wrote in *Adesida*:

> For example, a defendant can raise the issue that due to the duplicity in the indictment, it is unclear whether the jury's verdict in regard to either offense was unanimous.  This type of error does not have to be objected to before trial, because

> it concerns not only a technicality (two offenses are charged in one count), but also raises issues involving substantive rights (right to a unanimous verdict). Because the defendant herein is not objecting to a mere technicality (that his conviction on Count One must be dismissed because Count One charges two offenses), but instead argues that his substantive rights were affected by the duplicitous indictment, defendant has not waived his right to raise such issues simply because he failed to object to the indictment before trial.

129 F.3d at 849 (internal citations omitted). "The rationale for this distinction is that, whereas Rule 12 applies only to defects in the institution of criminal proceedings, a verdict rendered by a less-than-unanimous jury violates a defendant's Sixth Amendment rights by a harm that arises from the trial itself." *United States v. Kakos*, 483 F.3d 441, 444 (6th Cir. 2007) (internal citation omitted).

In this case, because Pedro and Perry failed to challenge the form of the indictment prior to trial, they have waived only their ability to now challenge the form of the indictment under Fed. R. Crim. P. 12(b)(3)(B).[2] In this sense the government is correct that they have waived their ability to raise duplicity on appeal. This failure, however, does not prevent Pedro and Perry from raising on appeal the alleged *harm* stemming from a duplicitous indictment. They assert that because of the duplicity in count one, it was impossible to know which of the multiple offenses charged the jury convicted them of, and that they have likely been deprived of a unanimous verdict.[3] They assert that

---

[2] Pedro and Perry, however, did challenge the indictment on the grounds that it was multiplicitous. The district court denied their challenges. As Pedro and Perry have not raised that challenge on appeal, we do not address it.

[3] Pedro and Perry also assert that the duplicitous nature of count one made it impossible for them to understand in advance which particular conduct had been charged. The Court considers this challenge as one relating to the form of the indictment, which they have waived by failing to raise the issue before trial. If they were confused as to charges against them, they should have raised the issue at the soonest possible time.

this duplicity was not cured by an instruction on unanimity as to each offense charged in count one.

Count one of the second superseding indictment states:

On or about September 17, 2007, in Martin County, in the Eastern District of Kentucky, William Lamar Burrell, Martin Pedro, and Oceanus Perry[,] aided and abetted by one another, did forcibly assault, resist, oppose, impede, intimidate, and interfere with United States Penitentiary, Big Sandy, correctional officers John Bussey, Roger Jude, and Ed King, federal law enforcement officers, inflicting bodily injury upon the officers, while the officers were engaged in the performance of their official duties, all in violation of 18 U.S.C. § 111(a)(l) and (b) and 18 U.S.C. § 2.

Second Superseding Indictment (R. 96).

As stated above, duplicity may be cured with a jury instruction. But Pedro and Perry never objected to the court's jury instructions on this issue. Nor did they ever request specific instructions that would have alleviated their concerns. They claim on appeal that the jury may not have been unanimous as to count one, yet they failed to request a special unanimity instruction at the charge conference. The district court specifically invited defense counsel to object to the proposed general unanimity instruction. Though counsel for Burrell requested that the jury be instructed initially that deadlock was an option, and the district court refused to do so, there was no objection from counsel for Pedro and Perry with respect to the unanimity instruction. Accordingly, our review is limited to plain error. *See Kakos*, 483 F.3d at 445 ("Because the harm from a duplicitous indictment is inextricably intertwined with the jury instructions actually given, when a defendant raises a challenge to a duplicitous indictment for the first time on appeal the issue of whether our review is limited to plain error depends upon whether the defendant objected to the jury instructions which failed to cure the faulty indictment. Where the defendant does not object to the district court's instructions to the jury, review is limited to plain error.").

To demonstrate plain error, a defendant must show (1) error, (2) that was plain, and (3) affected his substantial rights by causing him prejudice. *See United States v. Cotton*, 535 U.S. 625, 631-32 (2002). If all three conditions are satisfied, we may exercise our discretion to notice a forfeited error only if the error "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Davis*, 306 F.3d at 417.

Perry and Pedro first assert that the indictment charged both assault as well as aiding and abetting assault in a single count, and the jury instructions did not obviate the dual charge. We disagree. The aiding and abetting language in count one did not charge a separate offense, but rather provided an alternative theory for finding assault. Aiding and abetting is a theory of liability embodied in every federal indictment, whether or not specifically charged; it is not a distinct substantive crime. *See United States v. McGee*, 529 F.3d 691, 695 (6th Cir. 2008). So, the addition of the aiding and abetting language in count one of the indictment did not convert the count of a single assault into a count of assault *and* aiding and abetting assault. Furthermore, the fact that the judge instructed the jury that the criminal liability of one who encourages another to commit a crime is identical to that of one who directly commits the crime himself did not present any risk that the jury would not be unanimous in returning a guilty verdict on the first count. If some jurors concluded that Perry aided Pedro in assaulting Officers King and Bussey,[4] and some found that Perry directly assaulted Bussey, it was permissible for the jury to convict him on count one. Since the criminal liability for principals and aiders and abettors is identical, *see* 18 U.S.C. § 2, there is no

---

[4] There is no doubt that the jury, having watched the video, found Pedro responsible for directly assaulting at least two officers, and not merely aiding and abetting a co-defendant in the assault.

requirement that a jury unanimously find each was either a principal or an aider and abettor. *See, e.g.*, *United States v. Garcia*, 400 F.3d 816, 820 (9th Cir. 2005) (rejecting unanimity challenge, stating, "[i]t does not matter whether some jurors found that he performed these acts himself, and others that he intended to help someone else who did, because either way, Garcia's liability is the same: as a principal, for committing the acts charged."); *United States v. Hotron*, 921 F.2d 540, 545 (4th Cir. 1990) ("Whether some jurors found Horton guilty as a principal, believing that he delivered the fatal blow to the heart, while other jurors found him guilty as an aider and abettor, doubting exactly who delivered the fatal blow, is not controlling."); *id.* at 546 ("The fact that the jurors may have taken different routes to this conclusion provides no grounds to reverse . . . . By rendering aiders and abettors guilty as principals, 18 U.S.C. § 2 intended to make unnecessary a showing of the defendant's act at the level of particularity that Horton urges."); *United States v. Eagle Elk*, 820 F.2d 959, 961 (8th Cir. 1987) ("Even if the jury was divided on whether Eagle Elk committed the principal crime or aided and abetted in its commission, there can be no question that the illegal act was murder . . . . Thus the jurors were in substantial agreement as to the nature of Eagle Elk's guilty act, as required by the sixth amendment."); *see also Schad v. Arizona*, 501 U.S. 624, 632 (1991) ("'Plainly there is no general requirement that the jury reach agreement on the preliminary factual issues which underlie the verdict.'" (quoting *McKoy v. North Carolina*, 494 U.S. 433, 449 (1990) (Blackmun, J., concurring)). Unable to demonstrate error in instruction of the jury, Pedro and Perry cannot show plain error.

Putting aside this initial challenge, Perry asserts that there were multiple assaults charged in count one, making it impossible to determine for which the jury unanimously convicted and the court

later sentenced. He asserts that some of the jurors could have made their decisions based on one of the multiple assaults, while others could have made their decision to convict based on another of the assaults, potentially resulting in a non-unanimous verdict. Because Perry failed to object to the district court's jury instructions, we review the issue for plain error. *See Kakos*, 483 F.3d at 445.

Assuming the indictment was duplicitous in charging multiple assault offenses in count one,[5] Perry cannot demonstrate any prejudice from the improper joinder, or any risk that the jury was not unanimous in finding that he assaulted an officer, sufficient to satisfy plain error review. *See id.* at 446 ("Because defendant cannot demonstrate prejudice, he cannot show plain error, and we need not consider whether the indictment was duplicitous." (footnote omitted)). Considering the evidence presented at trial, particularly the video recording of the entire incident, the evidence amply supports a unanimous conviction on *at least* one act of assault (either as a principal or as an aider and abettor) by Perry, which is all he was charged with. Had the government charged each assault in a separate count, the evidence would have supported a unanimous guilty verdict on at least one (if not all) of the potential counts. Specifically, considering the evidence at trial, the jury undoubtedly determined, at the very least, that Perry aided Pedro in Pedro's assault on Officer King by restraining Officer

---

[5] When asked at oral argument why the government would charge the defendants with multiple assaults in a single count, counsel for the government stated that had it charged each incident of contact by each defendant in a separate count, it would likely have faced a multiplicity challenge rather than a duplicity challenge, which it apparently believed would have been stronger than the duplicity challenge here. We doubt, however, whether a multiplicity challenge by the defendants would have been successful, and the government likely would have been on more solid ground had it decided to charge each assault separately. *See, e.g.*, *Ladner v. United States*, 358 U.S. 169, 176 (1958); *United States v. Shumpert Hood*, 210 F.3d 660, 663 (6th Cir. 2000); *United States v. Segien*, 114 F.3d 1014, 1022 (10th Cir. 1997), overruled in part on other grounds, *Jones v. United States*, 516 U.S. 227 (1999); *United States v. Kazenbach*, 824 F.2d 649, 652 (8th Cir. 1987); *United States v. Farries*, 459 F.2d 1057, 1064 (3d Cir. 1972).

Bussey and preventing him from helping Officer King restrain Pedro. This is sufficient to convict on one count of assault. The evidence also supports a unanimous conclusion by the jury that Perry directly assaulted Officer Bussey by applying pressure to his throat, cutting off his air supply, and threatening to break his neck. Thus, there is no risk that the jury was not unanimous in its belief that Perry committed one instance of assault. The government's election to charge only one instance of assault was *more favorable* to Perry than charging him with multiple counts of assault and putting him in jeopardy of multiple convictions for assault. It is puzzling why Perry would request that the government charge him with multiple counts of assault in light of the evidence presented at trial. Therefore, even if the indictment was duplicitous in charging Perry with more than one assault in count one, and the infirmity was not remedied by a jury instruction, Perry has failed to demonstrate any prejudice from the errors. For this reason, he has not established plain error.

## IV.

Perry claims that the district court erred when it permitted the U.S. Marshals to keep his legs restrained during trial and denied his motion for a new trial based on the restraint.

The use of physical restraints during trial implicates a defendant's right to due process. *Deck v. Missouri*, 544 U.S. 622, 629 (2005). Visible physical restraints at trial "compromise the physical semblance of innocence; they may undermine the defendant's ability to participate in his own defense, and they impair the 'dignity and decorum of the judicial process' itself." *United States v. Waagner*, 104 F. App'x 521, 526 (6th Cir. 2004) (quoting *Kennedy v. Cardwell*, 487 F.2d 101, 106 (6th Cir. 1973)). Accordingly, they should be used as rarely as possible.

"[B]efore ordering the use of [restraints], the trial court must make a 'determination, in the exercise of its discretion, that [restraints] are justified by a state interest specific to a particular trial.'" *United States v. Miller*, 531 F.3d 340, 345 (6th Cir. 2008) (quoting *Deck*, 544 U.S. at 629). We have stated that when considering whether to physically restrain a defendant during trial the district court should conduct a formal hearing with sworn testimony so it can resolve factual disputes and a meaningful record is preserved for appeal and any potential collateral relief. *Kennedy*, 487 F.2d at 110.

Perry did not raise his challenge to the restraints until he spoke at sentencing.[6] Accordingly, his claim is reviewed for plain error. *See Miller*, 531 F.3d at 346. Under plain error review, the defendant must show "(1) error (2) that was obvious or clear (3) that affected defendant's substantial rights and (4) that affected the fairness, integrity, or public reputation of the judicial proceedings." *Id.* The defendant has the burden of proving he was prejudiced by the error at trial. *Id.*

Our decision in *Miller* involved a nearly identical situation. We found there that the district court abused its discretion when it deferred blindly to the U.S. Marshal's judgment that the defendant should be restrained with a stun-belt during trial. 531 F.3d at 346. We were further troubled by the government's argument on appeal that the use of a stun belt was warranted because the defendant

---

[6] Perry's statements at his sentencing relate to the fact that he was physically uncomfortable while restrained at trial, rather than to the prejudice he incurred because the jury could see the restraints. *See* R. 276, at 121 ("I have [sic] no hearing to determine the grounds [for requiring restraints,] including a flight risk, security, et cetera, which constitutes a violation of the individual."). The purpose of requiring the judge to make specific findings regarding the necessity of restraints during trial is so that the defendant can receive a trial free of undue prejudice, and preserve the dignity and decorum of the courtroom, not so that the defendant is provided due process before being deprived of his right to be physically free at trial. The inquiry's focus on whether the restraints are visible to the jury demonstrates the interests served by the requirement.

faced significant prison time and was evasive and untruthful in a prior hearing before the district court. We found neither reason justified physical restraint absent a finding that the defendant posed a threat to courtroom safety. *Id.* If the potential of a significant prison sentence were enough, we stated, the use of physical restraints at trial would become routine in federal drug and gun cases. We repeat ourselves in stating that this goes beyond what the Constitution permits. *Id.* Nonetheless, we found that, applying plain error review, the defendant had not met his burden of showing that he was prejudiced by the use of the device because he could not demonstrate the belt was visible to the jury. *Id.* at 346-48. The record was silent on whether the belt became visible to the jury, and we did not assume without evidence that it did. *Id.* at 347.

Here, the district court did not conduct a hearing to determine whether physical restraint during trial was required for purposes of courtroom safety. As in *Miller*, the court deferred to the recommendation of the U.S. Marshals that Perry be restrained at trial. This was error, and we repeat here that a district court is to conduct a hearing and create a record of its findings as to why physical restraints during trial are necessary. This is especially so when the restraints are not placed underneath a defendant's clothing, and may become visible to the jury more easily. If there is no objection by the defense, the government, although under no obligation to do so, should remind the judge to conduct a hearing on the reasons for restraining the defendants.

Even though we determine that the district court erred in not conducting a hearing and making specific findings, as in *Miller*, Perry has not demonstrated prejudice from the use of the restraints at trial. Although the record is silent with respect to whether the jury saw the physical restraints, we will not assume, without evidence, that the restraints were ever visible at trial. *See id.*

at 347.  To the contrary, it appears from our review of the record that the district court strived to prevent the jury from seeing the restraints.  For example, when discussing how Perry and Burrell would testify, the court made sure they would be seated in the witness stand before the jury entered the courtroom.  It also decided that Perry and Burrell were not to step outside of the witness stand, but would be permitted to stand to demonstrate a particular posture if necessary.  Given the district court's concerns, it is very likely that had the restraints become visible to the jury, the court would have made a record of that fact and taken appropriate steps to cure any harm.

Perry has not demonstrated any prejudice from the district court's failure to make a record of its finding that physical restraints were necessary.  For this reason, we conclude that Perry has not established plain error.

## V.

We briefly address the remaining claims of error.  Pedro asserts there was insufficient evidence to support his conviction of the assault count.  To establish a violation of 18 U.S.C. § 111(a)(1) and (b), the prosecution must prove that:  1) the defendant forcibly assaulted, resisted, opposed, impeded, intimidated, or interfered with one or more of the listed victims; 2) the victim was a federal law enforcement officer who was then engaged in the performance of his official duty; 3) the defendant acted knowingly and intentionally; and 4) in doing such acts, the defendant caused the victim to suffer bodily injury.  *See* 18 U.S.C. § 111(a) & (b); *see also* Pattern Crim. Jury Instr. 11th Cir. 1.2 (2003).  The term bodily injury means: 1) a cut, abrasion, bruise, burn, or disfigurement; 2) physical pain; 3) illness; 4) the impairment of the function of a bodily member, organ, or mental faculty; or 4) any other injury to the body, no matter how temporary.  *See* 18 U.S.C. § 1365(h)(4);

*see also* Pattern Crim. Jury Instr. 11th Cir. 1.2; *United States v. Myers*, 972 F.2d 1566, 1572 (11th Cir. 1992) (interpreting the term "bodily injury" used in 18 U.S.C. § 242). Viewing the evidence in the light most favorable to the prosecution, there was ample evidence of guilt. The evidence included a video taken from multiple angles clearly showing Pedro punching and kicking the officers. Further, the officers' injuries were sufficient to sustain the conviction.

Pedro and Perry claim the district court erred when it denied their motions for a new trial and for acquittal based on the alleged perjury of Officer Jude before the grand jury. Perry also argues he was entitled to acquittal or a new trial because the government withheld material evidence. We find no error in the district court's denial of these motions. Similarly, we find no merit in Pedro's argument that the court erred in declining to give his requested instructions on self-defense and the defense of others in response to excessive force.

We also reject Perry's argument that he was entitled to a separate trial. Notwithstanding his arguments to the contrary, the record establishes that his defense was not prejudiced by the joint trial.

Nor have the defendants supported their claim that the jury was not selected from a venire representing a fair cross-section of the community. The Sixth Amendment requires that the venire from which a jury is selected represent a "fair cross-section" of the community in which the court sits. *Taylor v. Louisiana*, 419 U.S. 522, 528-29 (1975); *United States v. Allen*, 160 F.3d 1096, 1103 (6th Cir. 1998). It does not, however, entitle the defendant to a jury of any particular composition. *Taylor*, 419 U.S. at 538. In *Duren v. Missouri*, 439 U.S. 357 (1979), the Supreme Court established the framework for analyzing fair cross-section claims. To establish a prima facie violation, the defendant must show that: 1) the group alleged to be excluded is a distinctive group in the

community; 2) the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and 3) this under-representation is due to systematic exclusion of the group in the jury-selection process. *Id.* at 364. We review fair cross-section challenges *de novo*. *Allen*, 160 F.3d at 1101.

Here, although the panel of potential jurors was composed entirely of white persons, with the exception of one Hispanic, there was no showing that the representation of African Americans in venires from which juries are selected is not fair and reasonable in relation to their percentage in the community population. Perry and Pedro rely on statistics for the entire Eastern District of Kentucky. 28 U.S.C. § 1861, however, provides that litigants have the right to trial by a jury selected at random from a "fair cross section of the community in the *district or division* wherein the court convenes." 28 U.S.C. § 1861 (emphasis added). In statutory divisions containing more than one place of holding court (such as the Southern Division of the Eastern District of Kentucky), "division" means "such counties . . . surrounding the places where court is held as the district court plan shall determine." 28 U.S.C. § 1869(e). The Eastern District has designated London as a place of holding court; therefore, the counties surrounding London as stated in E.D. Ky. L. Cr. R. 18.1(a)(3)(A) constitute the relevant community.

Lastly, the district court did not err in calculating Perry's sentencing guidelines. We have considered the other assignments of error and determine that none have merit. We affirm Pedro and Perry's judgments of conviction and Perry's sentence.

AFFIRMED.