UNITED STATES of America,
Appellee,

v.

Anthony SPERO, Defendant–Appellant,

Joseph Bissada, also known as Quadda-fi; Christopher Labate, also known as Chris AM; Robert Patterson; Joseph Pontecorvo, also known as Joe Pont; Michael Pontecorvo, also known as Michael Pont; Joseph Benanti; Charles Calco; Joseph Calco, Fabrit-zio Defrancisi, also known as Fabriz-zio; Joseph Dellatorre, also known as Little Joey; Christian Ludwigsen, also known as Chris Paciello, also known as Binger; Michael Yammine; James Calandra; William Galloway, Defendants.

Docket No. 02–1256.

United States Court of Appeals,
Second Circuit.

Argued: Feb. 12, 2003.

Decided: May 20, 2003.

Amended: May 29, 2003.

**58**

John W. Mitchell, New York, NY, for Defendant–Appellant.

Greg D. Andres, Assistant United States Attorney (David C. James, Assistant United States Attorney, of counsel, Roslynn R. Mauskopf, United States Attorney, on the brief), United States Attorney's Office for the Eastern District of New York, Brooklyn, NY, for Appellee.

Before: CABRANES and F.I. PARKER, Circuit Judges, and KAPLAN,* District Judge.

JOSÉ A. CABRANES, Circuit Judge.

After a jury trial in the United States District Court for the Eastern District of New York (Edward R. Korman, *Chief Judge*), defendant Anthony Spero was found guilty on a one-count indictment of conspiracy to commit racketeering, in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(d). The Government presented evidence from which the jury determined that Spero, while conducting the affairs of the Bonanno Organized Crime Family, conspired in violation of 18 U.S.C. § 1962(d) to engage in at least two of five specifically enumerated racketeering acts prohibited by 18 U.S.C. § 1962(c)—namely three murders, management of an illegal gambling enterprise, and loansharking.

The jury returned a verdict of guilty on April 5, 2001. Spero filed a motion for a judgment of acquittal under Fed.R.Crim.P. 29(c) on August 23, 2001, asserting, *inter alia*, (1) that the lone RICO conspiracy count under which he was tried and convicted was barred by the five-year statute of limitations and (2) that the indictment under which he was charged was insufficiently specific. The District Court held oral argument on that motion on December 14, 2001 and rejected Spero's claims in an unpublished order dated April 15, 2002. The Court stated only the following:

> The motion is denied. The statute of limitations argument on which the oral

* The Honorable Lewis A. Kaplan, of the United States District Court for the Southern District of New York, sitting by designation.

argument focused is foreclosed by Second Circuit precedent. *See e.g. U.S. v. Salerno,* 868 F.2d 524, 534 (2d Cir.1989). The remaining grounds are without merit.

The Court sentenced Spero primarily to life in prison and entered a final judgment on April 19, 2002. On appeal, Spero renews the two claims described above. We affirmed in a summary order filed February 28, 2003, which we hereby withdraw; we now publish this opinion in its place.

## I. Statute of Limitations Claim

Spero contends that the lone RICO count under which he was tried and convicted was barred by the five-year statute of limitations governing RICO prosecutions. *See* 18 U.S.C. § 3282 ("[N]o person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found ... within five years next after such offense shall have been committed."). The original indictment in this case was returned on May 25, 1999. Thus, in order for this prosecution to fall within the five-year limitations period, the RICO conspiracy charged must have continued at least through May 25, 1994.

In the sixth superseding indictment, under which Spero was ultimately tried, the Government alleged that Spero, while conducing the affairs of the Bonanno Organized Crime Family, conspired in violation of 18 U.S.C. § 1962(d) to engage in five specifically enumerated racketeering acts prohibited by 18 U.S.C. § 1962(c). It is uncontested that Racketeering Acts # 2–5 charged in the indictment (which acts consist of three murders and conspiracy to participate in an illegal gambling enterprise) were all completed by the end of 1993. With respect to Racketeering Act # 1, the Government charges that Spero engaged in a conspiracy to make and collect extortionate extensions of credit between January 1983 and May 1999.[1] This allegation, if proven, would bring the charged conduct within the limitations period. Spero asserts, however, that the Government failed to prove that any of his loansharking activities, which were primarily associated with an illegal gambling enterprise that folded in December 1993, took place on or after May 25, 1994.

The District Court held that Spero's arguments were precluded by our precedent in *United States v. Salerno,* 868 F.2d 524, 534 (2d Cir.1989), which in turn relied on *United States v. Persico,* 832 F.2d 705, 713–14 (2d Cir.1987). The Court understood these cases to stand for the proposition that once the Government established

---

1. Racketeering Act # 1 is described in the indictment as follows:

    16. The defendant ANTHONY SPERO agreed to the commission of the following acts, either one of which alone constitutes racketeering act one:

    A. *Conspiracy to Make Extortionate Extensions of Credit*

    17. In or about and between January 1983 and May 1999, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant ANTHONY SPERO, together with others, knowingly and intentionally conspired to make extortionate extensions of credit, in violation of Title 18, United States Code, Section 892.

    B. *Conspiracy to Collect Extensions of Credit by Extortionate Means*

    18. In or about and between January 1983 and May 1999, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant ANTHONY SPERO, together with others, knowingly and intentionally conspired to participate in the use of extortionate means to collect and attempt to collect extensions of credit, in violation of Title 18, United States Code, Section 894(a)(1).

    *United States v. Spero,* No. 99 Cr. 520 (Superseding Indictment S–6) (ERK) (E.D.N.Y.).

that Spero continued to act as a member of the Bonanno Organized Crime Family after May 25, 1994, the RICO conspiracy with which he was charged was deemed to have operated after that date as well—regardless of when Racketeering Act # 1 took place. Spero, however, asserts that the District Court misapprehended these precedents. His counsel maintained at oral argument before the District Court that the view of the law ultimately adopted by that court is untenable because it would mean that "once you joined an organized crime family, the conspiracy would continue in perpetuity until you left the family, and that's not what a RICO conspiracy is." Tr. of Oral Arg., Dec. 14, 2001, at 71–72.

■ Assuming without deciding that Spero's statute of limitations claim was properly raised in the District Court,[2] it is unnecessary to determine whether the District Court correctly interpreted *Persico* and *Salerno* because, as we explain below, we hold that Spero has failed to rebut the presumption that the loansharking conspiracy charged in Racketeering Act # 1 continued past May 25, 1994. Accordingly, Spero's prosecution was timely because Racketeering Act # 1 is presumed to have continued past May 25, 1994.

■ Several of our sister circuits have held that where a conspiracy statute does not require proof of an overt act (as 18 U.S.C. § 1962(d) does not) and "[w]here a conspiracy contemplates a continuity of purpose and a continued performance of acts, it *is presumed to exist* until there has been an affirmative showing that it has been terminated[,] and its members continue to be conspirators until there has been an affirmative showing that they have withdrawn." *United States v. Mayes*, 512 F.2d 637, 642 (6th Cir.1975) (emphasis added), *quoted in United States v. Maloney*, 71 F.3d 645, 660 (7th Cir.1995); and *United States v. Elwell*, 984 F.2d 1289, 1293 (1st Cir.1993); *see also United States v. Gonzalez*, 921 F.2d 1530, 1548 (11th Cir.1991). We agree. *Cf., e.g., United States v. Flaharty*, 295 F.3d 182, 192 (2d Cir.2002) (holding, where an overt act is required, that a conspiracy is presumed to continue until the last overt act); *United States v. Diaz*, 176 F.3d 52, 98 (2d Cir. 1999) (same).

■ The generalized loansharking activity alleged in Racketeering Act # 1 is precisely the type of activity that "contemplates a continuity of purpose and a continued performance of acts." *Maloney*, 71 F.3d at 660. Indeed, we have previously noted that "acts of extortion and illegal

---

2. A statute of limitations claim presents "an affirmative defense" that is "not cognizable on appeal unless properly raised below." *United States v. Walsh*, 700 F.2d 846, 855–56 (2d Cir.1983). With respect to the question of when a claim is "properly raised below," we held in *United States v. Grammatikos*, 633 F.2d 1013 (2d Cir.1980), that "[w]here the defense[ ] of time-bar ... [is] squarely interposed, [it] must be submitted to a properly instructed jury for adjudication." *Id.* at 1022. Similarly, in *Walsh*, we noted with disapproval that "[no] objection [was] taken to the trial court's failure to give such an instruction to the jury." *Walsh*, 700 F.2d at 855. Because the defendant in this case raised his statute of limitations defense in this case only *after* the

trial was over, and therefore did not allow the court even to consider a jury instruction on the limitations question, there is a strong argument that Spero's statute of limitations claim should be considered waived, or at least forfeited. *See United States v. Kelly*, 147 F.3d 172, 177 (2d Cir.1998) (holding that "waiver" applies to a defendant's failure to raise a statute of limitations defense in the District Court); *Walsh*, 700 F.2d at 855 (same); *Grammatikos*, 633 F.2d at 1022–23 (stating that a statute of limitations defense is "waived" where no request for a jury instruction on the issue is made, but also undertaking a "plain-error" forfeiture analysis). We do not reach this question.

debt collection inherently exude a 'pattern' and a threat of continuing criminal activity." *United States v. Minicone,* 960 F.2d 1099, 1107 (2d Cir.1992). Accordingly, once the Government met its burden of proof by establishing that the loansharking conspiracy existed, it was entitled to a presumption that the conspiracy continued until defendant demonstrated otherwise. The burden shifted to Spero to prove affirmatively that the loansharking conspiracy alleged in Racketeering Act # 1 was terminated before May 25, 1994, or that he withdrew from the conspiracy prior to that date, in order to sustain his statute of limitations claim. *See Flaharty,* 295 F.3d at 192 (holding that "where the government has shown that a conspiracy existed," it is the defendant's burden to prove "that the conspiracy was terminated or that [the defendant] took affirmative steps to withdraw").

■ Spero thus had to prove either (1) that the objectives of the conspiracy were accomplished prior to May 25, 1994 *or* (2) that he abandoned the conspiracy prior to that date. *See Persico,* 832 F.2d at 713 (holding that a RICO conspiracy continues until the objectives of the conspiracy are either "accomplished or abandoned"); *see also United States v. Rastelli,* 870 F.2d 822, 838 (2d Cir.1989) (same). With respect to the first of these possible showings, because the alleged objective of the conspiracy was an open-ended attempt to extort money through loansharking, Spero needed to present evidence from which the jury could have found that the goals of the conspiracy were accomplished in some final manner. Although Spero attempts to frame the loansharking acts alleged in Racketeering Act # 1 as limited exclusively to actions taken in connection with an illegal gambling enterprise that folded in 1993, the indictment is not so limited. *See* note 1, *ante.* The fact that the gambling

enterprise folded in 1993 is insufficient to establish that Spero's loansharking activities were complete as of that date, given the allegations in the indictment, which do not link his alleged loansharking activities to the illegal gambling enterprise. With respect to the second showing, Spero produced no evidence that he affirmatively renounced the goal of extorting money through loansharking. To the contrary, the evidence presented at trial would tend to support the opposite conclusion—namely, that he never renounced the goals of the loansharking conspiracy.

In the absence of proof that the goals of the loansharking conspiracy alleged in Racketeering Act # 1 were achieved in a final manner or that Spero abandoned the conspiracy, the conspiracy must be presumed to have continued past May 25, 1994, thereby bringing the indictment within the statute of limitations.

## II. Constitutionally Deficient Indictment Claim

■ Spero also asserts that he should be acquitted because the indictment in which he was charged was constitutionally deficient. More specifically, he claims that the Government's charge with respect to Racketeering Act # 1, which alleged only a "generic" conspiracy to "make extortionate extensions or collections of credit," Spero Br. at 43, was insufficiently specific to apprise him of the charges against him. Because this claim was not raised prior to trial, as unambiguously required by the law of the Circuit, *see United States v. Crowley,* 236 F.3d 104 (2000), the claim must be rejected.

In *Crowley,* we explained that, in accordance with Federal Rule of Criminal Procedure 12(b)(2), any challenge to an indictment must be brought prior to trial because

[the] mandate [of Rule 12(b)(2) ] is no mere pleading technicality. Rather, it serves a number of important purposes, including deterrence of gamesmanship—Rule 12(b)(2) prevents a defendant from deciding whether to object to an indictment's purported lack of specificity based solely on whether he is convicted or acquitted—and insuring that indictments are not routinely challenged (and dismissed) after the jury has been seated and sworn, a result that would waste jurors' time and force courts frequently to confront complex Double Jeopardy questions.

*Id.* at 108. Mindful of the concerns identified in *Crowley*, we decline to examine Spero's challenge to the specificity of the indictment in the instant case.

If Spero had been truly concerned that the lack of specificity in the indictment would prejudice his defense, he could have raised an objection prior to trial, at which point the District Court could have dismissed the indictment if it was indeed deficient, leaving the door open for more narrowly defined criminal charges to be brought in the future. But at this late stage of the proceedings—after Spero's trial has begun (and, indeed, ended)—if we were to entertain and accept his claim that his indictment was constitutionally deficient, we would have to dismiss the indictment, paving the way for a new trial. *See United States v. Scott,* 437 U.S. 82, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978) (holding that double jeopardy concerns are not implicated when counts in an indictment are dismissed during trial, even after the jury has been empaneled and sworn). The result would be a judicial condonation of gamesmanship and sharp practice that would unfairly give defendant two chances to obtain a verdict of acquittal and would waste precious judicial resources. Such a strategy of "sandbagging" the District Court cannot be tolerated. *Cf. Jarvis v. Ford Motor Co.,* 283 F.3d 33, 62 (2d Cir. 2002) (discussing the problem of "sandbagging"); *United States v. Male Juvenile,* 121 F.3d 34, 39 (2d Cir.1997) (same).

We noted in *Crowley* that a failure to raise a challenge to an indictment prior to trial may be excused upon a showing of cause for failure to raise the claim and prejudice. *Crowley,* 236 F.3d at 110 & n. 8. Spero has offered no reason why he did not raise his insufficiency-of-the-indictment claim prior to trial. Accordingly, he has not shown cause for his failure to challenge his indictment prior to trial, and his claim must be rejected.[3]

\*   \*   \*   \*   \*   \*

We have considered all of the defendant's arguments and find them to be without merit. For the reasons set forth above, the judgment of the District Court is hereby affirmed.

---

**3.** In his reply brief, Spero also asserts that the Government engaged in a "constructive amendment" of the indictment of this case, which is a *per se* violation of the Fifth Amendment requiring reversal of the conviction. Spero Rep. Br. at 1–10. Because this claim was not raised in the District Court or in defendant's main appellate brief, and because no plain error is apparent, we will not consider that claim. *See, e.g., O'Hara v. Weeks Marine, Inc.,* 294 F.3d 55, 67 n. 5 (2d Cir.2002).