UNITED STATES of America,
Appellee,

v.

Charles CARNEGLIA, also known
as Charlie Canig, Defendant–
Appellant.

No. 09–4522–cr.

United States Court of Appeals,
Second Circuit.

Dec. 17, 2010.

Beverly Van Ness, New York, NY, for Appellant.

Evan M. Norris, Assistant United States Attorney (David C. James, Robert Burlingame, and Marisa Megur Seifan, on the brief), for Loretta E. Lynch, United States Attorney for the Eastern District of New York, New York, NY, for Appellee.

Present: GERARD E. LYNCH,
DENNY CHIN, Circuit Judges,
EDWARD R. KORMAN, District Judge.*

* Honorable Edward R. Korman of the United States District Court for the Eastern District of New York, sitting by designation.

## SUMMARY ORDER

Defendant Charles Carneglia appeals from the September 17, 2009 judgment in the United States District Court for the Eastern District of New York (Weinstein, J.), convicting him after a jury trial of racketeering conspiracy, in violation of 18 U.S.C. § 1962(d), and extortion conspiracy, in violation of 18 U.S.C. § 1951(a). The RICO count charged that Carneglia was a key member in a long-running conspiracy to operate the Gambino organized crime family through a pattern of criminal activities, including a number of murders committed by Carneglia. The extortion conspiracy charged Carneglia with extorting (with the assistance of his co-conspirators) "tribute" or protection money from a Gambino associate. The district court sentenced Carneglia principally to life imprisonment and a $500,000 fine. Carneglia now appeals his conviction, raising arguments about the statute of limitations, trial errors, and sufficiency of the evidence. We assume the parties' familiarity with the facts and the record of prior proceedings, which we reference only as necessary to explain our decision.

## I. Statute of Limitations

### A. The Racketeering Conspiracy

■ Carneglia argues that there was insufficient evidence to convict him of the racketeering conspiracy because he withdrew from the conspiracy more than five years before he was indicted on February 7, 2008, and the government failed to prove that his membership in the conspiracy continued into the five-year statute of limitations period preceding that indictment. 18 U.S.C. § 3282(a). A defendant challenging the sufficiency of the evidence to support his conviction bears a "heavy burden," because when reviewing such a challenge, "we must credit every inference that could have been drawn in the govern-

ment's favor" and "defer to the jury's determination of the weight of the evidence and the credibility of witnesses, and to the jury's choice of the competing inferences that can be drawn from the evidence," and we affirm "where viewed in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements" of the crime charged. *United States v. Miller*, 626 F.3d 682, 691 (2d Cir.2010) (internal quotation marks omitted).

"It is well established that where the government has shown that a conspiracy existed and that a given defendant was a member of it, his membership is presumed to continue until the last overt act by any of the coconspirators, unless the defendant proves that the conspiracy was terminated or that he took affirmative steps to withdraw." *United States v. Flaharty*, 295 F.3d 182, 192 (2d Cir.2002). Carneglia does not dispute that the government offered ample evidence to prove both that he was once a member of the racketeering conspiracy and that the conspiracy continued into the limitations period. His membership in the conspiracy was therefore presumed to continue into the limitations period.

The government's case that his membership continued into the relevant period did not rely solely on this presumption, however. The government also offered uncontroverted testimony that Carneglia was a made member of the Gambino family, and that made members are never permitted, on pain of death, to quit, retire, or withdraw. In addition, the jury heard evidence that during the relevant period Carneglia associated with Gambino associates, Gambino associates contributed to his prison commissary account, Carneglia instructed an associate to collect an $1800 debt from one "Nicky Eyeballs" (which the jury could have inferred from the evidence

constituted a mob-related tribute payment), and Carneglia referred to the lack of a Christmas visit from another associate (which the jury could have inferred was a reference to a Christmas tribute payment, a common practice in the Gambino family). This evidence supported the jury's conclusion that his membership continued into the limitations period.

Carneglia's argument that he proved at trial that he withdrew prior to the relevant period is unpersuasive. Since this is a factual issue for the jury, his claim must be that no reasonable jury could have rejected his evidence of withdrawal, a claim that founders at the outset because the jury was entitled to reject any or all of this evidence on credibility grounds. *See United States v. Frampton*, 382 F.3d 213, 221 (2d Cir.2004).

Even if the jury did believe the defense testimony, moreover, it would not be compelled to find withdrawal. Carneglia's argument that while in prison he did not associate with "the mobsters" fails to show the *affirmative* step required for withdrawal. He argues that he affirmatively communicated his withdrawal to two fellow inmates and to his barber, but the jury was entitled to conclude that these communications were not "reasonably calculated to reach co-conspirators," because none of those individuals were associated with the Gambino family. *United States v. U.S. Gypsum Co.*, 438 U.S. 422, 464–65, 98 S.Ct. 2864, 57 L.Ed.2d 854 (1978). In 2007, Carneglia told his brother, a Gambino family member, that he did not "bother with these boys no more." The jury was entitled to find that that was not a clear statement of withdrawal and, in any event, the statement was made well within the limitations period. Carneglia's argument that he silently communicated his withdrawal by growing a beard, which was against Gambino family rules, fails in light

of evidence that while he had the beard he maintained a relationship with Gambino associates. The government also offered evidence that he had previously flouted Gambino rules while a member of the family. Thus, the jury reasonably could have concluded that Carneglia failed to rebut the presumption and the direct evidence that his membership in the conspiracy continued into the limitations period.

## B. Extortion Conspiracy

■ Carneglia argues that the government failed to prove that the conspiracy to extort Hunter Adams, a Gambino associate, continued into the limitations period, which reached back to February 7, 2003, because Adams stopped making payments in 2002 and no one pressed him to resume.

"[W]here a conspiracy statute does not require proof of an overt act ... and where a conspiracy contemplates a continuity of purpose and a continued performance of acts, it is presumed to exist until there has been an affirmative showing that it has been terminated, and its members continue to be conspirators until there has been an affirmative showing that they have withdrawn." *United States v. Spero*, 331 F.3d 57, 60 (2d Cir.2003) (emphasis omitted, internal quotation marks and brackets omitted).

The government made an adequate showing to trigger these presumptions. The extortion conspiracy statute here, 18 U.S.C. § 1951(a), does not require the government to prove an overt act. *United States v. Clemente*, 22 F.3d 477, 480 (2d Cir.1994). We have noted that "acts of extortion and illegal debt collection inherently exude a pattern and a threat of continuing criminal activity." *Spero*, 331 F.3d at 60–61 (internal quotation marks omitted). In this case, moreover, former members of the Gambino conspiracy specifically testified that, in the Gambino fam-

ily, extortion payment obligations such as the one at issue were permanent in nature, and evidence that Adams made weekly payments for over a decade supported that testimony. The government thus made an adequate showing to trigger the presumption that the conspiracy was ongoing and continued until Carneglia withdrew.

Once again, the government did not rely solely on this presumption to show that the conspiracy lasted into the limitations period. The government also offered Adams's testimony that he understood his extortion payment obligation to be permanent, that it lasted until he began cooperating with the government in 2004, and that he was made to fear what would happen if he did not make these payments.

Carneglia argues that Adams had no basis to believe that the extortion scheme continued into the limitations period, because Adams stopped payments in 2002 and Carneglia did not press him for subsequent payments. However, a reasonable jury was not required to conclude that Carneglia consented to terminate his extortion of Adams. Adams told Carneglia's associate in 2002 not that he would never again make payments, but only that "I can't do it right now," because he was facing a prison sentence. The jury reasonably could have inferred—as Adams testified that he did—that Carneglia's inaction in response to that statement constituted at most an agreement to suspend, rather than terminate, Adams's payments. Such a view of the facts would be consistent with the government's evidence that although Carneglia had previously allowed Adams to suspend payments when Adams went to prison in 2001, Carneglia's associate pressed Adams to resume payments a few months later. Seen in this light, the jury was entitled to conclude that Adams reasonably believed, based on Carneglia's

behavior, that his payment obligation continued until he began cooperating in 2004.

Carneglia failed to rebut the presumption and the evidence that the extortion conspiracy and his membership continued into the limitations period, because he offered no evidence that he took any affirmative steps whatsoever to terminate or withdraw from the conspiracy. We therefore see no reason to overturn the jury's conclusion that his membership in the extortion conspiracy lasted into the limitations period.

## II. Jury Charge

Carneglia argues that the district court erred by giving the jury a withdrawal instruction that included four examples of ways a defendant can withdraw from a conspiracy, while Carneglia's defense had advanced only one of them.

The district court instructed the jury:

A person can withdraw from a conspiracy by taking affirmative steps to terminate or abandon his participation in, and efforts to promote the conspiracy. The defendant must have taken positive action which disavowed or defeated the purposes of the conspiracy.

By way of example, a defendant may withdraw from a conspiracy by giving a timely warning to the proper law enforcement officials; or by wholly depriving his prior efforts of effectiveness in the commission of the crime; or by putting himself in a position where he could not participate in the conspiracy; or by doing acts which are inconsistent with the objects of the conspiracy and by making reasonable efforts to communicate those acts to his coconspirators.

When the court then asked the jury "[d]o all of you understand that?," no juror expressed confusion.

Carneglia argues that the alternative examples in the second paragraph "diverted the jury's attention from the defense theory and diminished it." In *United States v. LaMorte*, 950 F.2d 80 (2d Cir.1991), we affirmed a similar withdrawal instruction that included four examples of ways to withdraw from a conspiracy. In that case, the defendant, who had pursued only one of those ways, objected that "the other examples would only confuse the jury." *Id.* at 84. Although we cautioned against "providing the jury with alternative examples incompatible with the defense theory," *id.* at 84–85, we nonetheless affirmed because the charge gave the jury a correct interpretation of the law, "adequately apprised the jury of the defense theory," and was not so confusing as to warrant reversal, *id.* at 85.

Carneglia fails to persuade us that *LaMorte* is distinguishable in any meaningful respect. As in *LaMorte*, the challenged instruction here provided the jury with a correct statement of the law, and, as Carneglia's brief acknowledges, the challenged instruction provided an example "consistent with the defense theory" of withdrawal. Moreover, there is no evidence that the jury was confused by the instruction. We therefore see no reversible error in the district court's instruction. *United States v. Quattrone*, 441 F.3d 153, 177 (2d Cir. 2006) (noting that we review the charge "as a whole to see if the entire charge delivered a correct interpretation of the law," reversing only where "viewing the charge as a whole, there was a prejudicial error" (internal quotation marks omitted)).

## III. Continuance

■ Carneglia argues that "he, personally, did not have the opportunity to review the massive amount of 3500 material turned over in the weeks before trial," and that, by denying his requests for continuances to review this material, the district court deprived him of his right to assist his attorneys with his own defense.

We observe at the outset that the purpose of § 3500 is to provide the defense with prior statements of the witness for the purpose of impeaching the latter's testimony by demonstrating either "[f]lat contradiction between the witness' testimony and the version of the events given in his reports" or "[t]he omission from the reports of facts related at the trial, or a contrast in emphasis upon the same facts, even a different order of treatment." *Jencks v. United States*, 353 U.S. 657, 667, 77 S.Ct. 1007, 1 L.Ed.2d 1103 (1957). Whether a particular prior statement serves this purpose is obviously dependent upon the testimony of the witness. Under these circumstances, the critical issue is whether the defendant's attorney had sufficient time to review the 3500 material, prior to examining the witness. While a defendant may understandably have a desire to review the documents as well, the fact that *he* did not have sufficient time to do so does not, without more, undermine the purpose of § 3500. Moreover, even where the U.S. Attorney fails to produce 3500 material, a defendant is not entitled to relief unless there is a "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Nicolapolous*, 30 F.3d 381, 383–84 (2d Cir.1994) (internal quotation marks omitted). In this case, there is no claim that the defendant's attorney did not have sufficient time to review the 3500 material and the defendant has failed to make any showing that remotely approaches the standard of prejudice necessary to obtain relief. This consideration aside, we reject the defendant's argument that the district judge abused his discretion in denying the defendant's motion for a continuance. *Miller*, 626 F.3d at 690–91

(district court's decision to deny a continuance is reviewed for abuse of discretion).

The trial was originally set for a date eleven months after indictment. One month before trial, the grand jury returned the final superseding indictment, and Carneglia sought an adjournment at that point. In response, the district court adjourned the start of trial for two weeks—though Carneglia pressed for longer—and denied the government's request for a corresponding delay of disclosure deadlines for 18 U.S.C. § 3500 material. The government provided Carneglia with § 3500 material at least 36 days before the cross-examination of each of the seven cooperating witnesses who were the heart of the government's case, and the district court authorized Criminal Justice Act funds for additional paralegals to assist defense counsel in reviewing the material. The district court observed that "[d]uring the entire trial [Carneglia] frequently was consulted and participated actively. There was opportunity during that entire trial for further examination of these documents on a running basis, and all of these materials were available at the [counsel's] table and could have been available to him at other times." This opportunity was far in excess of what is contemplated by 18 U.S.C. § 3500(a), which mandates disclosure of a witness's prior statements only after the witness has testified on direct examination, and plainly does not contemplate delays of more than five weeks after each witness testifies to permit incarcerated defendants personally to review every page of § 3500 material. On these facts, the district court did not abuse its discretion by denying Carneglia's requests for any additional continuance to review § 3500 material.

## IV. Exclusion of Police Report

■ Carneglia argues that the district court denied his right to a fair trial by excluding a police report regarding a racketeering conspiracy predicate act—a 1990 armored car robbery and felony murder. The report contained descriptions of the two robbers, neither of which perfectly fit Carneglia's profile. Carneglia argues that the report shows he did not commit that crime and that the report therefore impeaches a cooperating witness who testified that Carneglia did commit the crime.

The district court was well within its broad discretion to exclude the report. *United States v. Kelley,* 551 F.3d 171, 175 (2d Cir.2009) ("We review evidentiary rulings for abuse of discretion," and we "find an abuse of discretion only where the trial judge ruled in an arbitrary or irrational fashion." (internal quotation marks omitted)). Defense counsel failed to identify the source of the hearsay descriptions in the report. When Carneglia cross-examined an eyewitness mentioned in the report, the eyewitness testified that he did not recall giving the descriptions of the two robbers. The court found that the report, itself, did not clearly indicate the source of those descriptions. Finding that the report contained hearsay, had "no reliability whatsoever" and "could confuse and mislead" the jury, the court excluded the report under Rule 403.

We cannot say that exclusion on these grounds was "arbitrary or irrational." *Id.* In addition, we reject any argument that the court abused its discretion by refusing to admit the report under the residual hearsay exception. *See United States v. DeVillio,* 983 F.2d 1185, 1190 (2d Cir.1993) (residual hearsay exception is "applied in the rarest of cases").

## V. Sufficiency Challenge to Cotillo Murder

■ The racketeering conspiracy count included the 1977 murder of Michael Cotil-

lo as a predicate act. Carneglia does not dispute that he killed Cotillo, but argues that the government failed to prove either that he acted with the intent to kill Cotillo or that the killing was related to the RICO conspiracy.

The evidence demonstrated that Cotillo was engaged in a fight outside a diner and Carneglia, who was passing by, intervened and stabbed Cotillo once in the heart. Carneglia argues that the government failed to prove his intent to kill Cotillo both because the fight was "impromptu," "not a premeditated, deliberate or carefully-aimed attack," and because Carneglia "did not repeatedly stab the victim." However, the government was not required to show either premeditation or repeated stabbing. The government proved that Carneglia stabbed Cotillo in the heart. Because the jury reasonably could have inferred Carneglia's intent to kill Cotillo from that fact alone, Carneglia's sufficiency claim fails. *See People v. Dones*, 279 A.D.2d 366, 366, 720 N.Y.S.2d 101 (N.Y.App. Div., 1st Dep't 2001) ("Defendant's homicidal intent could be inferred from evidence that defendant plunged a knife deep into the victim's chest, in the direction and close vicinity of vital organs.").

Carneglia also challenges the sufficiency of the evidence that this killing was related to the enterprise, claiming he just happened upon a fight that started with an argument about a girl. However, the government offered evidence that Cotillo belonged to a faction of the Gambino family that was feuding with Carneglia's faction. Because the jury could have inferred that the murder was related to this animosity, Carneglia fails to show that the jury lacked sufficient evidence to conclude that this murder was related to the enterprise.

## VI. Conclusion

We have considered all of Carneglia's contentions on this appeal and have found them to be without merit. For the foregoing reasons, the judgment of conviction is AFFIRMED.