**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 14a0170n.06

No. 12-6450

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
***Mar 03, 2014***
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff-Appellee, | ) |
| | ) |
| v. | ) |
| | ) |
| MEREDITH LYNN LAWRENCE, | ) |
| | ) |
| Defendant-Appellant. | ) |
| | ) |

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY

BEFORE: BATCHELDER, Chief Judge, and GRIFFIN, Circuit Judges; and BELL, District Judge.[*]

GRIFFIN, Circuit Judge.

Defendant Meredith Lawrence appeals his conviction and sentence for willfully filing false tax returns for 2004, 2005, and 2006 in violation of 26 U.S.C. § 7206(1). The district court sentenced Lawrence to twenty-seven months of imprisonment and ordered him to pay $128,253 in restitution to the IRS. Lawrence raises six arguments on appeal: (1) the indictment was constitutionally deficient because it lacked specificity and was duplicitous; (2) he was subjected to a prejudicial variance; (3) the indictment was constructively amended; (4) the district court erred in denying his motion for judgment of acquittal; (5) the district court erred in ordering restitution; and (6) trial counsel was ineffective. For the reasons that follow, the first five arguments are meritless and the sixth is premature. Accordingly, we affirm.

---

[*] The Honorable Robert Holmes Bell, United States District Judge for the Western District of Michigan, sitting by designation.

I.

Defendant Meredith Lawrence was a personal injury lawyer who owned Racers, a strip club, held a number of residential and commercial office properties, which he leased, and lived on over 3,000 acres of land, which he farmed. He earned income from these businesses and operated them with the assistance of several employees, including bookkeepers. In 2003, Lawrence hired CPA Robert Ryan to prepare tax returns for all of the entities in which Lawrence was involved. Ryan also prepared and electronically filed Lawrence's personal tax returns for 2004, 2005, and 2006. Ryan included Lawrence's unique PIN (Personal Identification Number) on each return.

In August of 2011, a grand jury indicted Lawrence for filing three false tax returns in violation of 26 U.S.C. § 7206(1). The three-count indictment alleged that during the 2004 (count one), 2005 (count two), and 2006 (count three) tax years, Lawrence willfully signed his personal income tax returns, under penalties of perjury, when he knew and believed that his adjusted gross income (AGI) was greater than what he reported on the Form 1040s for these years.

During a two-week jury trial, the government introduced proof that Lawrence failed to report income from five different sources: (1) "house fees" from the exotic dancers who worked at Racers;[1] (2) withdrawals from his client trust accounts; (3) rental income from attorneys who leased office space from him; (4) reimbursements from those same attorneys for office expenses; and (5) rental income from residential tenants.

---

[1] The exotic dancers at Racers had to pay several different fees to the "house." These included a daily right-to-work fee, a percentage of their earnings from their dances, and a parking fee.

At the close of the government's case, Lawrence moved for a judgment of acquittal on counts two and three based on the government's failure to enter Forms 8879 into evidence for the 2005 and 2006 tax years. Lawrence argued that without these forms, there was no proof that he actually signed those returns (and thus not subject to their jurat) because a PIN functions as a signature on e-filed returns only if the taxpayer completes a Form 8879 for the year in question. The district court denied the motion. Lawrence raised the issue again in his renewed motion for a judgment of acquittal at the close of his defense, which the court denied.

The jury convicted Lawrence on all three counts. The district court sentenced him to twenty-seven months on each count, to be served concurrently, and one year of supervised release. The court also ordered Lawrence to pay $128,253 in restitution to the IRS as a special condition of his supervised release. Lawrence timely appealed.

## II.

Lawrence begins by arguing that the indictment is constitutionally deficient for two reasons. First, he contends that the indictment is insufficiently specific because, although it charges that he made willfully false income statements in his personal returns, it does not indicate with sufficient particularity which specific income statements in those returns were false. Second, Lawrence argues that the indictment is duplicitous. He claims that five separate offenses are "effectively" charged in each one of the indictment's three counts because the government presented five sources of allegedly unreported income at trial, each of which amount to a separate violation of 26 U.S.C. § 7206(1).

The government responds that Lawrence has waived his right to challenge the technical specificity of the indictment by failing to raise this claim before trial. And even if he had preserved the issue, the indictment is facially sufficient. The government also responds that, to the extent that Lawrence's duplicity challenge alleges a substantive rights violation, which he may raise for the first time on appeal, the indictment is not duplicitous because the source of unreported income is not an essential element of a § 7206(1) offense.

If the issue has been preserved, we review the sufficiency of an indictment de novo. *United States v. DeZarn*, 157 F.3d 1042, 1046 (6th Cir. 1998). An indictment is sufficient if it fully, directly, and expressly sets forth all the elements necessary to constitute the offense intended to be punished. *United States v. Douglas*, 398 F.3d 407, 411 (6th Cir. 2005). "In particular, the indictment must: (1) set out all of the elements of the charged offense and must give notice to the defendant of the charges he faces, and (2) be sufficiently specific to enable the defendant to plead double jeopardy in a subsequent proceeding, if charged with the same crime based on the same facts." *United States v. McAuliffe*, 490 F.3d 526, 531 (6th Cir. 2007) (internal brackets, citation, and quotation marks omitted). "An indictment will usually be sufficient if it states the offense using the words of the statute itself, as long as the statute fully and unambiguously states all the elements of the offense." *United States v. Superior Growers Supply, Inc.*, 982 F.2d 173, 176 (6th Cir. 1992). The recitation of statutory language "must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description with which he is charged." *Id.* (internal quotation marks and citation omitted).

A defendant properly preserves a challenge to the sufficiency of an indictment by raising objections before trial. *See* Fed. R. Crim. P. 12(b)(3)(B) (stating that "a motion alleging a defect in the indictment or information" "must be raised before trial"). Failure to do so constitutes waiver under Rule 12(e) of the Federal Rules of Criminal Procedure unless a defendant can show good cause to excuse the waiver. *See* Fed. R. Crim. P. 12(e) ("A party waives any Rule 12(b)(3) defense, objection, or request not raised by the deadline the court sets under Rule 12(c) or by any extension the court provides. For good cause, the court may grant relief from the waiver."); *see also United States v. Kakos*, 483 F.3d 441, 444 (6th Cir. 2007) (a defendant waives technical errors to an indictment by his failure to object before trial). However, Rule 12(b)(3)(B) provides an exception: a court may consider "a claim that the indictment or information fails to invoke the court's jurisdiction or to state an offense" at any time while the case is pending. *See also United States v. Gatewood*, 173 F.3d 983, 986 (6th Cir. 1999) ("[A] defendant who contends that the indictment fails to establish jurisdiction or to charge an offense may raise that challenge at any time."). "This court 'strictly applies Rule 12(b), and has repeatedly held that failure to raise 12(b) motions in a timely fashion precludes appellate review.'" *United States v. Hackworth*, 483 F. App'x 972, 979 (6th Cir. 2012) (quoting *United States v. Brown*, 498 F.3d 523, 528 (6th Cir. 2007)).

In this case, Lawrence has waived his right to challenge whether the indictment was sufficiently specific. He never argued below—either before trial or after—that the indictment did not provide sufficient details regarding the five sources of income that he allegedly under-reported. Thus, the waiver rule in Rule 12(e) applies, and Lawrence does not identify any "good cause" to

excuse the waiver. Rule 12(b)(3)(B)'s exception does not apply here because Lawrence's specificity argument contains no suggestion that the district court lacked jurisdiction or that the indictment failed to state an offense. Further, Lawrence offers no response to the government's waiver analysis and openly admits in his brief that he did not preserve his sufficiency challenge. Under these circumstances, we have no trouble concluding that Lawrence has waived his right to challenge whether the indictment was sufficiently specific. *Cf. United States v. Rodriguez-Marrero*, 390 F.3d 1, 11–12 (1st Cir. 2004) (failure to challenge indictment on specificity grounds before trial constituted waiver of right to raise such challenge on appeal); *United States v. Spero*, 331 F.3d 57, 61–62 (2d Cir. 2003) (same).

However, Lawrence has not waived the argument that the indictment is duplicitous. "An indictment is duplicitous if it sets forth separate and distinct crimes in one count." *United States v. Davis*, 306 F.3d 398, 415 (6th Cir. 2002). If the issue has been preserved, we employ de novo review to determine whether an indictment is duplicitous. *United States v. Anderson*, 605 F.3d 404, 411 (6th Cir. 2010). "The overall vice of duplicity is that the jury cannot in a general verdict render its finding on each offense, making it difficult to determine whether a conviction rests on only one of the offenses or on both." *Davis*, 306 F.3d at 415 (internal quotation marks and citation omitted). The primary concern is that a defendant may be deprived of his right to a unanimous jury verdict in that "a jury might return a guilty verdict on the single count submitted to them without all twelve jurors agreeing that the defendant committed either of the offenses charged within that count." *Kakos*, 483 F.3d at 443.

In our circuit, a defendant who fails to object to a duplicitous indictment before trial waives his challenge as to the *technical* error in the indictment but not to the *substantive* error with respect to his right to a unanimous jury verdict for each crime. *Id.* at 444; *United States v. Adesida*, 129 F.3d 846, 849 (6th Cir.1997); *see also United States v. Boyd*, 640 F.3d 657, 666 (6th Cir. 2011) ("The failure to raise the question of duplicity prior to trial and verdict waives the argument, at least with respect to technical errors in the indictment."). We have reasoned that "a defendant's objections to the indictment made after trial has begun are properly addressed not to the indictment itself but to the harm stemming from the duplicitous indictment." *Kakos*, 483 F.3d at 444.

Although a defendant does not waive a duplicity challenge by failing to raise the objection before trial, our review is limited to plain error unless the defendant raises the duplicity issue in objections to the jury instructions. *Boyd*, 640 F.3d at 666; *Kakos*, 483 F.3d at 445; *see also United States v. Lloyd*, 462 F.3d 510, 514 (6th Cir. 2006) ("[Defendant] did not seek to dismiss the duplicitous count of the indictment before trial or challenge the jury instructions. Consequently, this court may overturn the conviction on count two only if there was plain error which affected [defendant's] substantial rights."). The rationale here is that "the case proceeds under the presumption that the court's [jury] instructions . . . will clear up any ambiguity created by the duplicitous indictment [because] [p]roper jury instructions can mitigate the risk of jury confusion and alleviate the doubt that would otherwise exist as to whether all members of the jury had found the defendant guilty of the same offense." *Kakos*, 483 F.3d at 444 (internal quotation marks and citations omitted).

In this case, Lawrence did not raise a duplicity challenge before trial, nor did he raise the issue with respect to the jury instructions. Accordingly, our review would normally be limited to plain error. Plain error is "(1) error (2) that was obvious or clear, (3) that affected [the] defendant's substantial rights and (4) that affected the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc) (internal quotation marks and citation omitted). "The plain error doctrine mandates reversal only in exceptional circumstances and only where the error is so plain that the trial judge and prosecutor were derelict in countenancing it." *United States v. Gardiner*, 463 F.3d 445, 459 (6th Cir. 2006) (internal quotation marks and citation omitted).

However, there is authority that "we will not apply the plain-error standard unless requested to do so by one of the parties." *United States v. Williams*, 641 F.3d 758, 763 (6th Cir. 2011); *see also United States v. Hogg*, 723 F.3d 730, 737 (6th Cir. 2013). Here, the government did not request plain error review, nor did it challenge Lawrence's assertion that de novo review applied. In fact, the government agrees that we "generally" review the sufficiency of an indictment de novo. And notably, the government argued that Lawrence's other unpreserved claims should be reviewed only for plain error, thereby suggesting an intention *not* to invoke plain error review regarding the duplicitous indictment claim. *See Williams*, 641 F.3d at 764 (government forfeited plain error review of unpreserved claims by invoking plain error for some of those claims but not for others).

In any event, regardless of whether the indictment is reviewed de novo or for plain error, it is not duplicitous. Lawrence's unorthodox duplicity argument confusingly blends with his variance argument. He does not attack the language of the indictment and claim that more than one offense is charged in the text of each count. Rather, he argues that because the government presented five sources of allegedly under-reported income at trial, this proof "effectively" created or "equates to" a duplicitous indictment because each source of under-reported income essentially becomes a separate charge. In reviewing an indictment for duplicity, however, we consider the language of the charging document, not whether the trial proofs "effectively" created a duplicitous indictment. *See Boyd*, 640 F.3d at 665–67; *Kakos*, 483 F.3d at 444; *Lloyd*, 462 F.3d at 514. And on its face, each count in the indictment charges only one 26 U.S.C. § 7206(1) offense, whose three essential elements are that a defendant (1) made and subscribed a return, statement, or document containing a written declaration that it was made under penalties of perjury, (2) when he knew it was false as to any material matter, and (3) which he did with the specific, willful intent to violate the law. *United States v. Bishop*, 412 U.S. 346, 350 (1973). Accordingly, the indictment is not duplicitous.

### III.

Lawrence next argues that he was subjected to a variance on counts one and two. He contends that while the grand jury charged him with falsely stating his AGI in those counts, at trial, the government introduced evidence of five separate sources of allegedly under-reported income, each of which could have been separately charged. Thus, a variance occurred because the government presented evidence of five offenses at trial but the grand jury charged only one in the

indictment. This led to a substantial likelihood that Lawrence was convicted of an offense other than that charged by the grand jury. The government responds that the trial evidence did not differ materially from the facts alleged in the indictment, much less create a substantial likelihood that he may have been convicted of an offense other than that charged by the grand jury.

This court generally reviews the record de novo to determine whether a variance has occurred. *United States v. Kuehne*, 547 F.3d 667, 682 (6th Cir. 2008). However, where the issue is raised for the first time on appeal—as is the case here—we are limited to plain-error review. *Id.*; *see also Vonner*, 516 F.3d at 386; *Gardiner*, 463 F.3d at 459. A variance is a violation of a criminal defendant's Sixth Amendment right "'to be informed of the nature and cause of the accusation.'" *United States v. Nixon*, 694 F.3d 623, 637 (6th Cir. 2012) (quoting U.S. Const. amend. VI.). "[It] occurs when 'the charging terms of the indictment are unchanged, but the evidence at trial proves facts materially different from those alleged in the indictment.'" *United States v. Beals*, 698 F.3d 248, 258 (6th Cir. 2012) (quoting *United States v. Swafford*, 512 F.3d 833, 841 (6th Cir. 2008)). A variance between the allegations in the indictment and trial proofs is not reversible error unless "the defendant shows prejudice to his ability to defend himself at trial, to the general fairness of the trial, or to the indictment's sufficiency to bar subsequent prosecutions." *United States v. Beasley*, 583 F.3d 384, 392 (6th Cir. 2009) (internal quotation marks and citation omitted). To obtain a reversal of a conviction based on a variance, the defendant carries the burden of proving both that a variance occurred and that it was prejudicial. *United States v. Hynes*, 467 F.3d 951, 962 (6th Cir. 2006). In this case, Lawrence has not carried his burden of satisfying either condition.

Counts one and two charged Lawrence with willfully filing false tax returns for 2004 and

2005 in violation of 26 U.S.C. § 7206(1). Section 7206(1) provides that any person who "[w]illfully

makes and subscribes any return, statement, or other document, which contains or is verified by a

written declaration that it is made under the penalties of perjury, and which he does not believe to

be true and correct as to every material matter" shall be guilty of a felony. 26 U.S.C. § 7206(1).

The three essential elements of a § 7206(1) offense are that the defendant (1) made and subscribed

a return, statement, or document containing a written declaration that it was made under penalties

of perjury, (2) when he knew it was false as to any material matter, and (3) which he did with the

specific, willful intent to violate the law. *Bishop*, 412 U.S. at 350.

In accord with § 7206(1) and the Supreme Court's construction of its essential elements,

count one charged:

> On or about April 13, 2005, in Gallatin County, in the Eastern District of Kentucky, MEREDITH L. LAWRENCE, a resident of Sparta, Kentucky, did willfully make and subscribe an IRS Form 1040, which was verified by a written declaration that it was made under the penalties of perjury and which he did not believe to be true and correct as to every material matter. That Form 1040, which was prepared and signed in the Eastern District of Kentucky and was filed with the Internal Revenue Service, stated that Lawrence's adjusted gross income was $1,011,380, whereas, as he then and there knew and believed his adjusted gross income was greater than $1,011,380, all in violation of 26 U.S.C. § 7206(1).

Count two mirrored count one but for a change in the date and AGI amount. The trial proofs did not

materially differ from these charges.

The government presented evidence of five different sources of income that Lawrence failed

to include in his AGI from: (1) Racers' house fees; (2) his law firm's IOLTA account; (3) rent for

attorneys' offices; (4) rent from residential renters; and (5) income from farming. Counts one and two alleged that Lawrence knowingly understated AGI on his 2004 and 2005 returns, and the evidence regarding the types of income that were under-reported directly proved those allegations. *See United States v. Tandon*, 111 F.3d 482, 487 (6th Cir. 1997) (no variance where government used proof of an improper deduction to establish how defendant understated total income on tax returns as alleged in indictment). Evidence on how Lawrence under-reported his AGI is entirely consistent with the allegation that he knowingly under-reported his AGI.

Contrary to Lawrence's repeated insistence otherwise, evidence of the five sources of under-reported income is not proof of five separate uncharged offenses. These are simply the means that Lawrence used to commit the crime or the "brute facts" that the jury considered in deciding whether the government had proved all essential elements of a § 7206(1) offense beyond a reasonable doubt. *Richardson v. United States*, 526 U.S. 813, 817 (1999). This conclusion is buttressed by the fact that "the source of unreported income is not an essential element of an offense under 26 U.S.C. § 7206(1)." *United States v. LaSpina*, 299 F.3d 165, 179 (2d Cir. 2002).

Further, even if we assume that a variance had occurred, Lawrence fails to establish that it caused him any prejudice. He had a comprehensive defense to each source of allegedly understated income. Lawrence testified that the "house fees" received from Racers represented the repayment of loans he had made to the business and, therefore, were not income. As for the other sources, he testified that he relied in good faith on his accountant and bookkeepers to prepare accurate tax returns for these tax years. And Lawrence's expert witness retained for trial, CPA Gary Stephens,

exhaustively disputed the "specific items" identified by the government as unreported income for the tax years in question. In light of the trial record, Lawrence cannot demonstrate a prejudice to his ability to defend or that the trial was generally unfair. *Beasley*, 583 F.3d at 392. Nor can he object on double jeopardy grounds because the record is sufficiently detailed to protect him against a subsequent prosecution for the same offense. *Id.* Accordingly, Lawrence's variance argument is meritless.

IV.

Next, Lawrence argues count three was constructively amended. He maintains that count three charged him with falsely reporting his taxable income but the applicable jury instruction erroneously stated that he was charged with falsely reporting his AGI. This error, plus the trial evidence of five additional uncharged offenses, resulted in a constructive amendment. The government responds by admitting that count three inadvertently stated that Lawrence's "taxable income [as opposed to AGI] was $371,151, whereas, as he then and there knew and believed that his adjusted gross income was greater than $371,151." However, given the evidence presented at trial, and jury instruction which required the jury to consider Lawrence's belief concerning only his AGI, not taxable income, he cannot show that such a typographical error in the indictment affected his substantial rights.

This court generally reviews the record de novo to determine whether a constructive amendment has occurred. *Id.* at 388. However, because the issue is raised for the first time on appeal, we are limited to plain-error review. *Id.*; *see also Vonner*, 516 F.3d at 386; *Gardiner*, 463

F.3d at 459. "A constructive amendment 'results when the terms of an indictment are in effect altered by the presentation of evidence and jury instructions which modify essential elements of the offense charged such that there is a substantial likelihood that the defendant may have been convicted of an offense other than the one charged in the indictment." *Kuehne*, 547 F.3d at 683 (quoting *United States v. Martinez*, 430 F.3d 317, 338 (6th Cir. 2005)). A constructive amendment may also occur when the difference between the indictment and the jury instructions allowed the defendant to be convicted on the basis of different behavior than that alleged in the original indictment. *Beasley*, 583 F.3d at 390. "Constructive amendments are 'per se prejudicial because they infringe on the Fifth Amendment's grand jury guarantee.'" *Kuehne*, 547 F.3d at 683 (quoting *Hynes*, 467 F.3d at 962). A defendant is therefore entitled to a reversal of his conviction if he shows that a constructive amendment had occurred. *Id.*

In this case, the jury instructions and trial proofs did not constructively amend count three. That count charged:

> On or about October 5, 2007, in Gallatin County, in the Eastern District of Kentucky, MEREDITH L. LAWRENCE, a resident of Sparta, Kentucky, did willfully make and subscribe an IRS Form 1040, which was verified by a written declaration that it was made under the penalties of perjury and which he did not believe to be true and correct as to every material matter. That Form 1040, which was prepared and signed in the Eastern District of Kentucky and was filed with the Internal Revenue Service, stated that Lawrence's *taxable income* was $371,151, whereas, as he then and there knew and believed that his *adjusted gross income* was greater than $371,151; all in violation of 26 U.S.C. § 7206(1).

(Emphasis added.) A plain reading shows that Lawrence was charged with understating his AGI, not his taxable income.

The corresponding jury instruction is entirely consistent with this charge:

(1) Count Three of the Indictment accuses the Defendant of violating Title 26 of the United States Code, section 7206(1). For you to find the Defendant guilty of Count Three of the Indictment, you must be convinced that the government has proved each and every one of the following elements beyond a reasonable doubt:

(a) The Defendant made and subscribed an IRS Form 1040 on or about October 5, 2007;

(b) The IRS Form 1040 contained a written declaration that it was made under the penalties of perjury;

(c) The Defendant knew and believed that the IRS Form 1040 was not true and correct as to every material matter, that is, he knew and believed that his adjusted gross income was greater than $371,151, as reported on the IRS Form 1040; and

(d) The defendant falsely subscribed the IRS Form 1040, willfully and with the specific intent to violate the law.

(2) An authorized electronic filing is sufficient to satisfy the first element of the crimes charged even if the income tax return does not contain the Defendant's actual written signature.

Under these circumstances, the jury instruction did not modify the essential elements of the offense charged, nor is there any difference between the indictment and the jury instruction which allowed for Lawrence to be convicted on the basis of different behavior than that alleged in the indictment. *Beasley*, 583 F.3d at 390. The indictment inadvertently alleged that Lawrence's taxable income in 2006 was $371,151 when it should have alleged that Lawrence's AGI was $371,151. This was an erroneous factual allegation, not the crime charged. The crime charged was that Lawrence knew and believed that his AGI was greater than $371,151, and the trial evidence was consistent with this theory. Moreover, the applicable jury instructions mirrored the indictment, specifically

(1)(c). Thus, contrary to Lawrence's position, this is not a situation where he was charged with falsely stating his taxable income but the court instructed the jury that he was charged with falsely stating his AGI. Accordingly, Lawrence's constructive amendment argument falls flat.

V.

Lawrence next challenges the district court's denial of his motion for a judgment of acquittal on counts two and three. He argues that no rational jury could have found that he knowingly "subscribed" to a false return because the government presented no evidence that he actually signed the returns for tax years 2005 and 2006. Lawrence contends that his PIN is not the equivalent of his actual signature because there is no proof that his accountant filed a Form 8879 for those years, which must be filed before the IRS will treat a taxpayer's PIN as his signature. The government responds that Lawrence's PIN is the equivalent of his signature and any argument to the contrary is frivolous.

"For appeals from a denial of a judgment of acquittal based on the sufficiency of the evidence, the standard of review is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found [the] essential elements of the crime[.]" *United States v. Kernell*, 667 F.3d 746, 750 (6th Cir. 2012) (internal quotation marks and citation omitted). The single essential element in dispute here is whether Lawrence "made and subscribed" returns for tax years 2005 and 2006. *See Bishop*, 412 U.S. at 350; 26 U.S.C. § 7206(1). Although Lawrence does not dispute that he "made"— i.e., filed—returns for those years, he claims that he

did not "subscribe" or sign them. *See* Black's Law Dictionary (9th ed. 2009) (defining "subscribe" as the "act of signing one's name on a document; the signature so affixed.").

Based upon the trial proofs in this case, a rational trier of fact could have found beyond a reasonable doubt that Lawrence authorized the filing of the 2005 and 2006 returns with his name "subscribed" to them. The subscription element can be established with proof that a taxpayer authorized another person to sign his name on a return. *United States v. Ponder*, 444 F.2d 816, 822 (5th Cir. 1971). The IRS treats a PIN as an electronic signature. *See* 26 U.S.C. § 6061(b); *see also* IRS Pub. 1345 (defining an "Electronic Signature" as a "[m]ethod of signing a return electronically through use of a Personal Identification Number (PIN)"). Lawrence's tax preparer, CPA Robert Ryan, testified that in regards to the electronic filing of a tax return, a PIN serves as a taxpayer's signature and that Lawrence authorized him to e-file his personal tax returns, using his PIN, for 2004, 2005, and 2006. Lawrence does not dispute that his PIN is on those returns or that he authorized Ryan to e-file his returns. Moreover, an IRS employee specifically confirmed that a PIN functions as a signature for e-filed returns. This evidence provided a sufficient basis from which the jury could find that Lawrence "subscribed" his name to the 2005 and 2006 returns.

Lawrence's Form 8879 argument does not change this result. He claims that the IRS treats a PIN as a signature on e-filed returns *only* if the taxpayer completes and signs a Form 8879 for the year in question. And here, because the record does not contain a Form 8879 for tax years 2005 and 2006, these returns are unsigned.[2] Lawrence's reliance on the absence of these forms is misplaced.

---

[2]Lawrence admits his PIN is the equivalent of his signature for his 2004 return because the government introduced a Form 8879 for that year.

First, although he contends that his returns for those years are unsigned, the IRS accepted both returns as properly filed and apparently never questioned whether these returns were unsigned. Second, a rational jury could treat the undisputed presence of Lawrence's PIN—a unique personal identifier, similar to a handwritten signature—on the e-filed returns for 2005 and 2006 as proof beyond a reasonable doubt that he "subscribed" to these returns. Accordingly, the district court properly denied Lawrence's motion for a judgment of acquittal.

VI.

Lawrence further argues that the district court erred in ordering him to pay $128,253 in restitution because district courts have no authority to order restitution for convictions of offenses under Title 26.[3] The government agrees that the district court could not include restitution as an independent part of Lawrence's sentence but responds that the court properly ordered restitution as a special condition of supervised release under *United States v. Blanchard*, 618 F.3d 562, 576–77 (6th Cir. 2010), a case in which we observed that a district court may impose restitution as a special condition of supervised release in a Title 26 criminal case.

Generally, we review de novo whether a restitution order is permitted under the law, and if it is, we review the amount ordered for an abuse of discretion. *United States v. Butler*, 297 F.3d 505, 516 (6th Cir. 2002). In this case, however, we review the restitution order only for plain error because Lawrence failed to raise the instant objection below. *Id.* at 518; *see also Vonner*, 516 F.3d at 386; *Gardiner*, 463 F.3d at 459.

---

[3]Lawrence challenges only the district court's authority to assess the award, not its amount.

The district court did not plainly err by including restitution as a special condition of supervised release. Federal courts have no inherent authority to award restitution but may order the same to the extent authorized by statute. *United States v. Evers*, 669 F.3d 645, 655 (6th Cir. 2012). In this case, the district court was powerless to award restitution under the two federal restitution statutes—the Victim Witness Protection Act, *see* 18 U.S.C. § 3663, and the Mandatory Victim Restitution Act, *see id.* § 3663A—because neither authorizes restitution as an independent part of the sentence for offenses under Title 26. However, as we observed in *Blanchard*, if a defendant has been convicted of a tax crime under Title 26, and a court finds that the government has suffered a loss, the court may order the defendant to make restitution as a special condition of supervised release. *See* 618 F.3d at 577; *see also Butler*, 297 F.3d at 518 (restitution properly included as a special condition of supervised release in Title 26 criminal case); U.S.S.G. § 5E1.1(a)(2) (recognizing district court's authority to order restitution as a special condition of supervised release for offenses not specifically included in the restitution statues). Such is the case here. Accordingly, the district court did not plainly err by ordering Lawrence to pay $128,253 in restitution as a special condition of supervised release.

VII.

Lawrence's final argument is that trial counsel was constitutionally deficient because counsel (1) failed to request a "bill of particulars" before trial; (2) failed to request a specific unanimity verdict form; (3) failed to argue that Racers' cash was not income at the appropriate time; (4) failed to object to hearsay evidence during the government's direct examination of one of Lawrence's

bookkeepers; and (5) failed to adequately cross-examine one of Lawrence's bookkeepers. The government responds that the record is not sufficiently developed to allow the court to properly assess the merits of these claims on direct appeal.

"As a general rule, a defendant may not raise ineffective assistance of counsel claims for the first time on direct appeal, since there has not been an opportunity to develop and include in the record evidence bearing on the merits of the allegations." *Martinez*, 430 F.3d at 338 (internal quotation marks and citation omitted). However, as an exception to the general rule, we will review an ineffective assistance of counsel claim on direct appeal if "the record is adequately developed to allow the court to properly assess the merits of the issue." *United States v. Fortson*, 194 F.3d 730, 736 (6th Cir. 1999)). The exception exists for "rare cases" in which the record is "completely developed[.]" *United States v. Williams*, 527 F. App'x 457, 460 (6th Cir. 2013).

The general rule controls here, and we decline to review Lawrence's premature ineffective assistance of counsel claims. This is not the rare instance in which the record is adequately developed so that we may adjudicate the merits of these claims on direct appeal. There is no affidavit or testimony from Lawrence's trial counsel explaining his defense strategy. Consequently, "we have no way of knowing whether a seemingly unusual or misguided action by counsel had a sound strategic motive or was taken because the counsel's alternatives were even worse." *United States v. Ferguson*, 669 F.3d 756, 763 (6th Cir. 2012) (internal quotation marks and citation omitted); *see also United States v. McCarty*, 628 F.3d 284, 295–96 (6th Cir. 2010) (holding that when the appellate record "consists largely of unsubstantiated allegations without affidavits from

defense counsel or [the defendant]," it is not adequately developed). Nor does the record permit a thorough evaluation of the prejudice, if any, resulting from any alleged deficiencies. This is not surprising because, as the Supreme Court has observed, "[w]hen an ineffective-assistance claim is brought on direct appeal, appellate counsel and the court must proceed on a trial record not developed precisely for the object of litigating or preserving the claim and thus often incomplete or inadequate for this purpose." *Massaro v. United States*, 538 U.S. 500, 504–05 (2003). Accordingly, we will not address Lawrence's ineffective assistance of counsel claims.

VIII.

For these reasons, we affirm the judgment of the district court.